[Cite as *M & G Automotive Serv., Inc. v. Bouscher*, 2014-Ohio-5370.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
|  |  | JUDGES: |
| M&G AUTOMOTIVE SERVICE, INC., | : | Hon. W. Scott Gwin, P.J. |
| MARK AND VIRGINIA PORTER | : | Hon. John W. Wise, J. |
|  | : | Hon. Craig R. Baldwin, J. |
| Plaintiffs-Appellants | : |  |
|  | : |  |
| -vs- | : | Case No. 2014 AP 03  009 |
|  | : |  |
| MATTHEW C. BOUSCHER, ET AL | : |  |
|  | : | O P I N I O N |
| Defendants-Appellees |  |  |

CHARACTER OF PROCEEDING:     Civil appeal from the Tuscarawas County
Court of Common Pleas, Case No. 2008
CV 07 0519

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     December 4, 2014

APPEARANCES:

For Plaintiffs-Appellants

SCOTT SANDROCK
ELIZABETH SHIVELY BOATWRIGHT
Brennan, Manna & Diamond, LLC
75 East Market Street
Akron, OH 44308

For Defendants-Appellees

STEVEN SHROCK
Critchfield, Critchfield & Johnston, Ltd
138 East Jackson Street
Millersburg, OH 44654

*Gwin, P.J.*

{¶1} Appellants appeal the February 13, 2014 judgment entry of the Tuscarawas County Court of Common Pleas denying their motion to enforce settlement.

*Facts & Procedural History*

{¶2} In April of 2002, appellants Mark Porter ("Mark") and Virginia Porter ("Virginia") entered into a stock purchase agreement with appellees Matthew Bouscher ("Matthew") and Michael Bouscher ("Michael") for Matthew and Michael to purchase M&G Automotive Service, Inc. ("M&G"), a car repair business owned by Mark and Virginia. On July 1, 2008, M&G, Mark, and Virginia filed a complaint against Matthew and Michael for breach of contract by failing to complete the purchase, breach of shareholder duty, injunctive relief, tortuous interference with business relationships, misappropriation of trade secrets, and disclosure of confidential information.

{¶3} The case ultimately resulted in an agreed resolution and the case was dismissed on May 14, 2009. To memorialize the agreement between the parties, counsel for appellants drafted a settlement agreement and counsel for appellees drafted the attached land installment contract.

{¶4} The settlement agreement provides, in pertinent part, that appellees would purchase the remaining 160 shares of M&G for a purchase price of $185,000. In addition, that appellees and Margin Properties, LLC, with sole members Mark and Virginia, would enter into a land contract where appellees would purchase the building located at 2615 North Wooster Avenue, Dover, Ohio, for a purchase price of $185,000 pursuant to the terms and conditions provided.

{¶5} Under the heading "Land Contract," the settlement agreement states:

The Bouchers will enter into a certain Land Contract with Margin Properties, LLC to purchase the building located at 2615 N. Wooster Avenue, Dover, Ohio, pursuant to the terms of a Land Contract attached to this Agreement as Exhibit C. The parties agree that the Land Contract will be for a purchase price of $185,000 with a monthly payment of $1,250. The purchase price will bear interest at the rate of 6% per annum with the Buyers to be responsible for all insurance, taxes, and maintenance of the building. The Buyers may, at their own expense, conduct an environmental phase one and a real estate title search. The Land Contract will provide for the loan obligation due in full on or before June 1, 2013. There will be a cross default provision in the Land Contract and the Promissory Note and the default of one will be deemed a default of the other. No early purchase of the building will be permitted unless there is a simultaneous payment of the balance of the Promissory Note.

The land installment contract provides that appellants' company, Margin Properties, LLC, agreed to sell to appellees the real estate located at 2615 N. Wooster Ave., Dover, Ohio for the purchase price of $185,000 with monthly installment payments of $1,250 beginning in May of 2009 and continuing until the balance was paid in full, provided that the remaining unpaid principal balance would be due and payable on June 1, 2013. With regards to the "Seller's Mortgage," the land contract states as follows:

**Seller's Mortgage; Encumbrances.** Buyers shall pay the First Federal bank loan currently secured by the building. Seller acknowledges that no additional mortgages will be filed on the property by the Seller of if

so, Seller is responsible for payment of any of those obligations.  If Seller is in default under any such mortgage, then Buyers may cure such default, and all sums so paid by Buyers shall be credited by Sellers as payments under this Contract.

The Premises are presently subject to the following encumbrances; zoning ordinances; legal highways; covenants; restrictions; conditions and easements of record; the lien of real estate taxes and assessments not yet due and payable.

{¶6}    During the term of the land installment contract, appellees paid both the monthly installment payments as well as the First Federal mortgage payments.  At the conclusion of the land installment contract, Margin Properties, LLC still owed $65,588.82 on the First Federal mortgage.  The parties participated in a closing of the real estate purchase relative to the land installment contract on May 31, 2013.  The Settlement Statement reflects a payoff of the mortgage loan to First Federal Community Bank of $65,588.82, which was paid by the Seller, Margin Properties, LLC, c/o Mark F. Porter and Virginia B. Porter.  The Settlement Statement was executed by appellants and appellees.

{¶7}    On December 3, 2013, appellants filed a motion to enforce settlement and a detailed motion to enforce settlement agreement on December 31, 2013 alleging that appellees breached the settlement agreement by failing to pay the balance of the First Federal Bank Loan debt.  Appellees filed a memorandum in opposition on January 24, 2014 and a supplemental memorandum in opposition on February 5, 2014.  The trial court held a motion hearing on appellants' motion on January 27, 2014.  On February

13, 2014, the trial court issued a judgment entry denying appellants' motion to enforce settlement agreement. The trial court found that by the clear language of the settlement agreement, appellees were to pay $185,000. Further, that the language of the settlement agreement offers little guidance as to the intention of the parties respecting the loan obligation beyond the term of the land installment contract. However, by the clear language of the land installment contract, the sale price of the real estate was $185,000 and that during the period of the land installment contract appellees would make other payments incidental to the real estate. Finally, that appellants acquiesced to the settlement of the amounts due by proceeding with the closing as set forth on the settlement statement.

{¶8} Appellants appeal the February 13, 2014 judgment entry of the Tuscarawas County Court of Common Pleas and assigns the following as error:

{¶9} "I. THE TRIAL COURT ERRED IN FAILING TO ENFORCE THE UNAMBIGUOUS LANGUAGE OF THE SETTLEMENT AGREEMENT, WHICH CLEARLY REQUIRED APPELLEES TO PAY THE FIRST FEDERAL BANK LOAN OBLIGATION.

{¶10} "II. THE TRIAL COURT ERRED IN CONSIDERING OUTSIDE EVIDENCE IN FINDING THAT APPELLANTS ACQUIESCED TO THE SETTLEMENT OF THE AMOUNTS DUE BY PROCEEDING WITH THE CLOSING.

{¶11} "III. THE TRIAL COURT ERRED WHEN IT INTERPRETED AN ALLEGEDLY AMBIGUOUS PROVISION OF THE SETTLEMENT AGREEMENT WITHOUT FIRST HOLDING AN EVIDENTIARY HEARING CONCERNING THE PARTIES' INTENT."

I.

**{¶12}** Appellants first contend the trial court erred in failing to follow the unambiguous language of the settlement agreement, which appellants argue required appellees to pay the First Federal loan obligation. Appellants cite paragraph 2 and 4 of the settlement agreement and paragraph 7 of the land contract as unambiguously requiring appellees to pay the First Federal loan obligation. We disagree.

**{¶13}** The standard of review to be applied to a ruling on a motion to enforce settlement agreement depends primarily on the question presented. If the question is an evidentiary one, this court will not overturn the trial court's finding if there was sufficient evidence to support such finding. *Chirchiglia v. Ohio Bur. of Workers' Comp.*, 138 Ohio App.3d 676, 742 N.E.2d 180 (7th Dist. 2000). If the dispute is a question of law, an appellate court must review the decision de novo to determine whether the trial court's decision to enforce the settlement agreement is based upon an erroneous standard or a misconstruction of the law. *Continental W. Condominium Owner's Assn. v. Howard E. Ferguson, Inc.*, 74 Ohio St.3d 501, 1996-Ohio-158, 660 N.E.2d 431.

**{¶14}** As detailed below, appellants waived an evidentiary hearing as the record shows no indication that appellants requested an evidentiary hearing or objected to the nature of the motion hearing proceedings. *Monea v. Campisi*, 5th Dist. Stark No. 2004CA00381, 2005-Ohio-5215. Further, appellants did not file a transcript of the motion hearing held before the trial court and thus this Court must presume the validity of the trial court's proceedings and accept the factual determinations of the trial court. *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 400 N.E.2d 384 (1980).

Accordingly, the question before this Court is whether the trial court erred as a matter of law in dismissing the motion to enforce the settlement agreement.

{¶15} Settlement agreements are contractual in nature and, as such, basic principles of contract law apply. *Rulli v. Fan Co.*, 79 Ohio St.3d 374, 1997-Ohio-380, 683 N.E.2d 337. "[A] valid settlement agreement is a contract between parties, requiring a meeting of the minds as well as an offer and an acceptance thereof." *Id.* Additionally, the terms of the settlement agreement must be reasonably certain and clear. *Id.* It is a fundamental principle in contract construction that contracts should "be interpreted so as to carry out the intent of the parties, as that intent is evidenced by the contractual language." *Skivolocki v. East Ohio Gas Co.*, 38 Ohio St.2d 244, 313 N.E.2d 374 (1974). A reviewing court should give the contract's language its plain and ordinary meaning unless some other meaning is evidenced with the document. *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978). If the terms of the contract are determined to be clear and unambiguous, the interpretation of the language is a question of law reviewed de novo on appeal. *State ex rel. Parsons v. Fleming*, 68 Ohio St.3d 509, 628 N.E.2d 1377 (1994). A contract is ambiguous if its terms cannot be clearly determined from a reading of the entire contract or if its terms are susceptible to more than one reasonable interpretation. *United States Fidelity & Guar. Co. v. St. Elizabeth Medical Ctr.*, 129 Ohio App.3d 45, 716 N.E.2d 1201 (2nd Dist. 1998). A court cannot in effect create a new contract "by finding an intent not expressed in the clear language employed by the parties." *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978).

{¶16} Appellants contend that paragraph 2 of the settlement agreement provides support for their contention that appellees were unambiguously supposed to pay the First Federal loan obligation. However, pursuant to the plain and clear language of this paragraph, it has no impact or instruction as to who is to pay the First Federal obligation. Paragraph 2 is entitled "Stock Purchase" and deals exclusively with appellees agreement to purchase the shares of stock owned by appellants, an obligation separate from appellees' purchase of the real property on which M&G operates. Paragraph 2 provides that appellees, "acknowledge that in addition to purchasing the stock, they will be responsible for the payment of all notes and other loans owed by M&G to First Federal and others and will agree to indemnify and hold the Porters harmless from and against any obligations on such third party notes." Utilizing the plain meaning of the language used, it refers only to debts owed by M&G but not the mortgage debt at issue which was owned by Margin Properties, LLC, as evidenced by the land installment contract which states that the "Seller" is "Margin Properties, LLC." In addition, at the beginning of the settlement agreement that sets out the settlement terms, it is clear that the stock purchase of appellees is separate from the land contract by which appellees would purchase the building from Margin Properties, LLC.

{¶17} Appellants also cite paragraph 4 of the settlement agreement and argue that the last sentence of the paragraph that "The Land Contract will provide for the loan obligation due in full on or before June 1, 2013" refers to the First Federal mortgage loan. However, it is clear from the language of the paragraph, in conjunction with the language of the land contract, that the "loan" referred to in paragraph 4 is the loan created by the land contract itself. Writings executed together as part of the same

transaction should be read together, and the intent of each part will be gathered from a consideration of the whole. *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.*, 78 Ohio St.3d 353, 1997-Ohio-202, 678 N.E.2d 519.

{¶18} Paragraph 4 requires appellees to enter into the land contract with Margin Properties and the remainder of the paragraph recites the terms to be included in the land contract. Paragraph 4 describes an installment purchase of the property with monthly payments, interest on the unpaid principal balance, and a balloon payment of the remaining balance, or the "loan obligation" in four years. This section of the settlement agreement is confirmed by the land contract which provides that the purchase price of the premises is $185,000 and that the purchase price is payable in monthly installments payments of $1,250.00 from May 1, 2009 and "continuing on the same day of each subsequent month until said balance is paid in full; provided, however, that unless sooner paid the remaining unpaid principal balance shall be due and payable on June 1, 2013." Reading these written instruments in conjunction, the intent that can be gathered from both together is that it is the remaining unpaid principal balance on the $185,000 purchase price which must be paid in full by June 1, 2013 is the only "loan obligation" included in paragraph 4 of the settlement agreement.

{¶19} Appellants finally cite to paragraph 7 of the land contract which provides that appellees "shall pay the First Federal bank loan currently secured by the building * * * If Seller is in default under any such mortgage, then Buyers may cure such default, and all amounts so paid by Buyers shall be credited by Seller as payments under this Contract." As noted by the trial court, this provision clearly requires appellees to make the mortgage payments during the term of the land contract. However, the provision

does not state, as appellants argue, that appellees were required to pay the mortgage at closing or after the four-year term of the installment contract.

{¶20} The provisions in the land contract (Paragraph 1) and settlement agreement (Paragraph 1(C) and Paragraph 4) clearly and unambiguously provide that the agreed-upon purchase price of the real property was $185,000. As noted above, writings executed together as part of the same transaction should be read together and the intent of each party should be gathered from a consideration of the whole. *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.*, 78 Ohio St.3d 353,1997-Ohio-202, 678 N.E.2d 519. Utilizing the plain language contained in these provisions, there is no indication that the purchase price is $185,000 plus the First Federal mortgage balance. Paragraph 7 of the land contract provides that appellees had to pay for the mortgage during the four-year term of the land contract and there is no dispute that appellees paid the mortgage during the land contract term. However, from the plain language of the documents, there is no indication that appellees were required to pay the balance of the mortgage at the end of the land contract.

{¶21} The trial court found that: by the clear language of the settlement agreement, appellees were to pay $185,000; that by the clear language of the land installment contract, the sale price of the real estate was $185,000; and that during the period of the land installment contract, appellees would make other payments incidental to the real estate.

{¶22} Accordingly, based upon our analysis above, we find that the trial court did enforce the unambiguous language of the settlement agreement in denying appellants' motion to enforce as the settlement agreement and land contract terms regarding the

First Federal obligation is not ambiguous. Based upon the unambiguous language of the documents, the parties' intent was for appellees to pay the First Federal mortgage during the land contract term and purchase the property by the end of the land contract term for the sum of $185,000, with no obligation to pay the balance of the First Federal obligation of Margin Properties, LLC. Accordingly, appellants' first assignment of error is overruled.

II.

{¶23} Appellants argue the trial court erred in considering outside evidence in finding that appellants acquiesced to the settlement of the amounts due by proceeding with the real estate closing. Appellants again contend in their second assignment of error that the trial court erred in interpreting the settlement agreement where it unambiguously provides that appellees are responsible for the First Federal obligation. As analyzed in Assignment of Error I, we find the trial court did not err in finding that appellees were not responsible for the First Federal obligation pursuant to the plain language of the settlement agreement and land contract.

{¶24} Appellants further argue the trial court erred when it found appellants acquiesced to the settlement of the amounts due by proceeding with the real estate closing by considering outside evidence. However, appellants do not include a description of the outside evidence appellants allege the trial court relied on in making this determination. The only outside evidence cited to in the trial court's judgment entry is the Settlement Statement that reflected a payoff of the mortgage loan to First Federal which was paid by Margin Properties, LLC, c/o Mark F. Porter and Virginia B. Porter. However, it is clear from the trial court's entry that such document was only considered

in its finding that appellants acquiesced to the settlement of the amounts due by proceeding with the closing and was not utilized in the trial court's determination that the unambiguous language of the settlement agreement and land contract did not require appellees' to pay the mortgage balance of Margin Properties. Further, since the trial court found that the language of the settlement agreement and land contract did not require appellees' to pay off the First Federal mortgage, the acquiescence finding by the trial court was an alternative basis for denying appellants' request for relief. Thus, any error in the alternative basis for denying appellants' relief is moot based upon our disposition of appellants' first and third assignments of error. Appellants' second assignment of error is overruled.

III.

{¶25} Appellants finally argue that the trial court erred when it interpreted an allegedly ambiguous provision of the settlement agreement without holding an evidentiary hearing. We disagree.

{¶26} The Ohio Supreme Court has held that "where the meaning of terms of a settlement agreement is disputed, or where there is a dispute that contests the existence of a settlement agreement, a trial court must conduct an evidentiary hearing prior to entering judgment." *Rulli v. Fan Co.*, 79 Ohio St.3d 374, 1997-Ohio-380, 683 N.E.2d 337. However, in the "absence of such a factual dispute, a court is not required to conduct such an evidentiary hearing." *Id.* In this case, the trial court held what it called a motions hearing. Appellants did not file a transcript of this hearing. The purpose of an evidentiary hearing is to "clear up any ambiguity with regard to the terms or existence of a settlement agreement." *Johannsen v. Ward,* 6th Dist. No. H-09-028,

2010-Ohio-4203. In this matter, as discussed above, the terms of the settlement agreement and land contract were unambiguous. Since there were no ambiguous terms in the settlement agreement and land contract, the trial court did not err by failing to conduct a formal evidentiary hearing.

{¶27} Further, we find appellants waived the issue of an evidentiary hearing as the record shows no indication that appellants requested an evidentiary hearing or objected to the nature of the motion hearing proceedings. *Monea v. Campisi*, 5th Dist. Stark No. 2004CA00381, 2005-Ohio-5215; *Brown v. Spitzer Chevrolet Co.*, 5th Dist. Stark No. 2012 CA 00105, 2012-Ohio-5623. Appellants waived their right to an evidentiary hearing by failing to request such a hearing or to object to the lack of an evidentiary hearing. *Monea v. Campisi*, 5th Dist. Stark No. 2004CA00381, 2005-Ohio-5215. Appellants' third assignment of error is overruled.

{¶28} Based on the foregoing, appellants' assignments of error are overruled and the February 13, 2014 judgment entry of the Tuscarawas County Court of Common Pleas is affirmed.