**[Cite as *RHDK Oil & Gas, L.L.C. v. Willowbrook Coal Co.*, 2021-Ohio-1362.]**

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| RHDK OIL & GAS, LLC d.b.a. RED HILL DEVELOPMENT, *et al.,* | : | JUDGES: |
| | : | |
| | : | Hon. Craig R. Baldwin, P.J. |
| Plaintiffs-Counterclaim Defendants- | : | Hon. John W. Wise, J. |
| Appellees, | : | Hon. Patricia A. Delaney, J. |
| | : | |
| -vs- | : | |
| | : | |
| WILLOWBROOK COAL COMPANY, *et al.,* | : | Case No. 2020 AP 08 0017 |
| | : | |
| Defendants-Counterclaim Plaintiffs- | : | |
| Appellants | : | O P I N I O N |

CHARACTER OF PROCEEDING:         Appeal from the Tuscarawas County
                                 Court of Common Pleas, Case No. 2017
                                 CV 05 0329


JUDGMENT:                        Affirmed


DATE OF JUDGMENT:                April 16, 2021


APPEARANCES:


For Plaintiffs-Counterclaim Defendants-          For Defendants-Counterclaim Plaintiffs-
Appellees                                        Appellants

DAVID E. BUTZ                                    THOMAS A. YOUNG
JACQUELINE BOLLAS CALDWELL                       Porter Wright Morris & Arthur
MATTHEW W. ONEST                                 41 South High Street, 29th Floor
Krugliak, Wilkins, Griffiths & Dougherty Co, LPA Columbus, Ohio  43215-6194
4775 Munson Street, NW /PO Box 369663
Canton, Ohio 44735-6963

*Baldwin, J.*

{¶1} Appellants, Willowbrook Coal Company, William Deadman, Roxanna Deadman, Brenda Neal, Andrew Carrick and Frank H. Gorskey, II, appeal the August 20, 2020 decision of the Tuscarawas Court of Common Pleas granting the appellees' motion to enforce a settlement agreement. Appellees are Gary D. Kimble, Eric S. Kimble, Jo Elaine Mako, Keith Kimble, Gregory W. Kimble, Doris J. Kimble, RDHK Investments, LLC, Kimble Company, Jem Ori, LLC, Esk Ori, LLC, Gdk Ori, LLC, Gwk Ori, LLC and Kbd Ori, LLC and RHDK Oil & Gas, LLC d.b.a. Red Hill Development.

## STATEMENT OF FACTS AND THE CASE

{¶2} This case arose from efforts of some of the parties, in 1977, to engage in the development of oil and gas leases in Tuscarawas and Coshocton County. The precise details of the changes in the relationships, parties and the documentation of the interests of the parties is unnecessary for the resolution of this appeal, except to note that at some time the parties disagreed on the description of their interests in the relevant properties and, in 2014, appellees filed their first complaint seeking resolution of the dispute. That complaint was dismissed on May 10, 2017, amended, and refiled as the case before us.

{¶3} The record shows that the parties engaged in extensive discovery and pleading practice up to the settlement of the dispute in March 2019. The parties memorialized the settlement in two documents captioned Memorandum of Settlement Agreement (MSA) and Settlement in Principal (SIP). The MSA contained terms of the settlement agreement and incorporated additional information from the SIP. The parties recognized that additional documentation would be necessary to complete the settlement,

so they included paragraph sixteen in the MSA: "The parties will cooperate in drafting and executing a comprehensive settlement agreement and other documents necessary to effectuate the settlement." These "other documents" included transfers of various interests in minerals, primarily oil and gas, as well as issues involving rights-of-way, leases, royalties and taxes. The parties also included a provision in the MSA that would permit them to seek a judicial resolution of disputes regarding those "other documents": "The parties will endeavor to have the Court retain jurisdiction over this case to enforce the this (SIC) memorandum and the comprehensive settlement agreement and any disputes arising under either agreement. Any disputes arising under the aforesaid shall be submitted to the Judge." (MSA ¶ 19.) The parties accepted these documents as a full and final settlement binding on all parties and they notified the trial court of the status of the litigation.

{¶4} The trial court recognized "that extraordinary measures will be necessary to finalize the resolution/settlement of this litigation" but expected the parties to resolve the case expeditiously.

{¶5} The trial court monitored the status of the case and regularly requested progress reports from the parties. The parties represented to the trial court and to this court that they exchanged proposed settlement documents on multiple occasions but were unable to resolve all disputes. After failing to reach an agreement upon all the issues necessary to complete the transactional documents to carry out the terms of the settlement, the parties agreed to meet for two days in January 2020 with the guidance of the mediator that assisted them in the completion of the MSA. One of the appellants was prevented from attending due to a medical issue and asked that this meeting be

postponed. Rather than postpone the meeting, counsel for the parties participated without the clients being present.

{¶6} The result of the January 2020 meeting/mediation is disputed. Appellees contend that the attorneys reviewed each disputed issue closely, drafted language that addressed all concerns and reached a final agreement regarding the necessary documents. Appellees argue the conference was completed a day early because the parties had completed all the necessary documents to facilitate the settlement. Appellees drafted documents based upon the agreements reached by the attorneys and forwarded them to appellants' counsel two days after the conclusion of the conference. Appellees claim that appellants responded five weeks later by repudiating the agreement and raising issues not previously discussed.

{¶7} Appellants view the January meeting differently and report that they did not agree to any terms at the meeting. Instead, they described the outcome of the meeting as a proposal by appellees' counsel that remained to be reviewed and considered by appellants. They also contend that the documents produced by appellees after the January meeting contain "contested provisions that revise, contradict or are inconsistent with terms in the MSA/SIP, add essential terms not agreed to in the MSA/SIP, add language that is not required by the MSA/SIP and is not necessary to carry out the intent of the parties expressed in the MSA/SIP in a manner that is fair and just, or are factually inaccurate, inconsistent with other language in those documents or are improper for some other reason." (Appellants' Brief, p. 8-9).

{¶8} In February 2020, the trial court ordered a status conference regarding progress toward the completion of documents necessary to carry out the settlement. On

March 20, 2020 the parties discussed the status of the case with the trial court and the trial court found "that a full day Oral Final Resolution Hearing should be scheduled in this case for Friday, 7/24/2020." The trial court granted leave to both parties to file a motion to enforce settlement no later than June 29, 2020 and two weeks to respond to any motion that was filed. The time to respond was expanded to three weeks at the request of the appellants' counsel.

{¶9} Appellees moved to enforce the settlement on June 2, 2020. Appellant did not file a motion to enforce the settlement, but did file a Memorandum Contra the Appellees' Motion to Enforce the Settlement as well as a Motion in Limine to restrict testimony regarding the January 2020 meeting of counsel as well as certain aspects of the settlement agreement. Appellee filed a Reply in support of their Motion to Enforce the Settlement and a Memorandum Contra the Motion in Limine. Appellants filed a Reply To Appellees Memorandum Contra the Motion in Limine and both parties filed Hearing Briefs prior to the Final Resolution Hearing.

{¶10} The parties continued to work toward an agreement in the weeks between the January 2020 conference and the Final Resolution Hearing conducted by the trial court.

{¶11} The trial court conducted the Final Resolution Hearing via telephone on July 24, 2020 during which time the parties argued their position and offered exhibits in support of their contention. Neither party presented sworn testimony of witnesses. Of note is the fact that appellees supplied the court with the documents their counsel prepared after the January 2020 conference (January 2020 Documents). Though rejected by appellants, appellees argued that these documents represented an

appropriate final resolution to all outstanding requirements. Appellants did not provide the trial court an alternative, argued that the documents offered by appellees were inappropriate for several reasons and suggested that the parties could benefit from an additional sixty days to resolve the remaining disputes. The appellants described their objections to parts of the January 2020 Documents in their Hearing Brief and offered a color-coded exhibit at the hearing that highlighted language they disputed.

**{¶12}** The trial court took the matter under advisement and issued a judgment entry containing a thorough review of the proceedings leading to the hearing and noted that "any evidence presented by the parties at the hearing was considered by the Court only for purposes of filling in any gaps left by the MSA/SIP and not for purposes of varying any of the terms of the MSA and/or those portions of the SIP specifically incorporated into the MSA." (Judgment Entry, Aug. 20, 2020, p.7).

**{¶13}** With regard to the motion in limine, the court noted that it was "not considering any mediation communication for purposes of its determination of Plaintiffs' Motion to Enforce Settlement," that it was making "no determination regarding whether counsel for the parties did or did not agree to the various provisions set forth in the January 2020 Documents" because "that issue [was] not determinative of the Court's ruling on Plaintiffs' Motion to Enforce Settlement." The trial court also decided that "for purposes of Plaintiffs' Motion to Enforce Settlement, the Court [would] not consider the January 2020 Documents as being agreed to by Defendants or their counsel in January 2020 or at any other time." *Id.*, p.8. The court granted that part of the motion in limine "as it pertains to Defendants' request that the Court not consider evidence regarding what

occurred at mediation, and denied, as moot, in part, as it pertains to Defendants' other requests." *Id.*

**{¶14}** The court found that the MSA/SIP was a valid enforceable settlement agreement that contains the essential terms of the parties' settlement and that it had jurisdiction to enforce the terms of the parties' agreement as requested by appellees.

**{¶15}** The trial court also found that appellees had submitted the January 2020 Documents and requested that the documents be adopted by the trial court as the documents necessary to complete the settlement. The court also noted that appellants did not provide an alternative set of documents, but instead suggested that the parties be provided an additional sixty days to negotiate. The trial court rejected appellants' suggestion finding "that it is unlikely that the parties will be able to reach such an agreement in the next sixty days." *Id.*, p. 4.

**{¶16}** The trial court reviewed the MSA/SIP and found that the January 2020 Documents appropriately filled the gaps left by the MSA/SIP, that they were not inconsistent with the parties' settlement agreement, did not contradict the settlement agreement and that those documents, together with the MSA/SIP reach a fair and just resolution of the issues in the case. *Id.* p. 17. The court did find that it was necessary to amend the January 2020 Documents "to remove the provisions requiring defendants to pay certain ad valorem, production, severance and other taxes related to the Group 3 Leases unless those taxes are specifically imposed upon them." *Id. p.* 19. The trial court ordered that the parties were to execute the January 2020 Documents on or before September 16, 2020 and submit to them to opposing counsel on or before September 18,

2020 and that all transfers shall be submitted to the appropriate county recorder's office on or before September 23, 2020.

{¶17} The trial court did not address the appellants' specific objections to the January 2020 Documents set out in their Hearing Brief, nor did it include an analysis of the color-coded exhibit offered by appellant. Instead, it issued a general holding in favor of appellees. Appellants did not request more detailed findings of fact or conclusions of law from the trial court.

{¶18} Appellants filed a notice of appeal and submitted one assignment of error:

{¶19} "I. THE COURT BELOW ERRED IN ADOPTING PLAINTIFFS-APPELLEES' JANUARY 2020 DOCUMENTS, WITH CERTAIN SPECIFIED MODIFICATIONS AND/OR ADDITIONS, AS THE COMPREHENSIVE SETTLEMENT DOCUMENTS THAT PLAINTIFFS-APPELLEES ("PLAINTIFFS") AND DEFENDANTS-APPELLANTS ("DEFENDANTS") MUST COMPLETE AND EXECUTE TO CARRY OUT THE TERMS OF THE PARTIES' MEMORANDUM OF SETTLEMENT AGREEMENT (THE "MSA")."

## STANDARD OF REVIEW

{¶20} The parties disagree regarding the standard of review we are to apply to this appeal. Appellants contend that they "raise only issues of law regarding the interpretation and construction of the MSA/SIP and whether the Modified January 2020 Documents properly effectuate the terms of the MSA/SIP. " (Appellants' Brief, p. 6). Appellees contend that we should review the decision for an abuse of discretion, citing *Pittman v Chase Home Fin., L.L.C.*, 8th Dist. No 97321, 2012-Ohio-1060, ¶ 8 and *Tabbaa v Koglman,* 8th Dist Cuyahoga No 84539, 2005-Ohio-1498, ¶ 15.

**{¶21}** Both parties cited our decision in *M3 Producing, Inc. v. Tuggle,* 5th Dist. No. 2017CA00036, 2017-Ohio-9123, 91 N.E.3d 805, ¶ 11 where we found that:

> The standard of review to be applied to a ruling on a motion to enforce settlement agreement depends primarily on the question presented. If the question is an evidentiary one, this Court will not overturn the trial court's finding if there was sufficient evidence to support such finding. *M & G Automotive Serv., Inc. v. Bouscher*, 5th Dist. Tuscarawas No. 2014 AP 03 009, 2014-Ohio-5370, 2014 WL 6852066, citing *Chirchiglia v. Ohio Bur. of Workers' Comp.*, 138 Ohio App.3d 676, 742 N.E.2d 180 (7th Dist. 2000). If the dispute is a question of law, an appellate court must review the decision de novo to determine whether the trial court's decision is based upon an erroneous standard or a misconstruction of the law. *Id.,* citing *Continental West Condominium Unit Owners Assn v. Howard E. Ferguson, Inc.*, 74 Ohio St.3d 501, 660 N.E.2d 431 (1996).

**{¶22}** In the case before us, the parties have expressly agreed that they are bound by the terms of the settlement agreement comprised of the MSA which incorporates selected parts of the SIP. The appellees sought assistance from the trial court to enforce the settlement, asking it to determine whether the documents they presented to the court satisfied that portion of the settlement agreement which required that the parties cooperate to complete documents necessary to affect the fulfillment of the settlement agreement. Appellant did not object to the trial court's acting in this fashion and did not complain that its involvement was not permitted. The appellants focused their argument on what they perceived as conflicts between the settlement agreement and the January

2020 Documents, in the form of inconsistencies, missing information or the addition of essential terms that were not approved by appellants.

{¶23} Neither party argued that the trial court was obligated to interpret an ambiguous term or phrase in the settlement agreement and neither suggested that the trial court could add or amend essential terms to the agreement that were not previously approved. They both contended that should the trial court fill any gaps in the agreement, the terms supplied by trial court could not contradict the terms of the settlement agreement or add new essential terms, but must serve to complete the settlement as intended by the parties.

{¶24} We held in *Hinds v. Muskingum Cty.,* 5th Dist. Muskingum No. CT2016-0063, 2017-Ohio-8212, ¶ 17, *cause dismissed,*152 Ohio St.3d 1433, 2018-Ohio-1400, 95 N.E.3d 417 that a settlement agreement is a contract that is comprised of an agreement upon the essential terms and that the existence of such a contract, and consequently the identification of the essential terms, is a question of fact.  The determination regarding whether the documents proposed by appellee contradicted, supplanted or added essential terms to the contract is also, therefore, a question of fact.  Further, the January 2020 Documents describe the actions the appellees' proposed were necessary to complete the terms of the settlement agreement.  A determination of whether a party has fulfilled the terms of a settlement is a question of fact, so a party's proposed compliance with those terms likewise presents a question of fact for the trial court. *Savoy Hosp., L.L.C. v. 5839 Monore St. Assocs., L.L.C.,* 6th Dist. Lucas No. L-14-1144, 2015-Ohio-4879, ¶ 28.

**{¶25}** The trial court fulfilled its obligation by examining the evidence provided by the parties, which consisted of documents supplied at the July 24, 2020 hearing, and determining whether the documents offered by appellees, the January 2020 Documents, served to complete the settlement agreement or whether, as alleged by appellant, the documents were inconsistent with and contradicted the terms of the MSA. The question presented to the trial court was evidentiary and a question of fact, and we review the trial court's decision for abuse of discretion. We will not overturn the trial court's finding if there was sufficient evidence to support it.

**ANALYSIS**

**{¶26}** Appellant's complains that the trial court "erred in adopting Plaintiffs-Appellees' January 2020 Documents, with certain specified modifications and/or additions, as the comprehensive settlement documents that Plaintiffs-Appellees ("Plaintiffs") and Defendants-Appellants ("Defendants") must complete and execute to carry out the terms of the parties' Memorandum of Settlement Agreement (the "MSA")."

**{¶27}** While our obligation is limited to reviewing the trial court's decision for an abuse of discretion, we believe it is critical to include the context surrounding the decision to provide a complete understanding of the circumstances.

**{¶28}** First, and most puzzling, is the appellants' decision to not offer the trial court an alternative to appellees' January 2020 Documents. The trial court discussed the possibility of a motion to enforce the settlement as early as March 2020 and set dates for the filing of the motion by either party in April 2020. Appellants sought an enlargement of the time to respond to three weeks, which was granted, and the parties continued to exchange their version of the appropriate documents after the motion to enforce the

settlement was filed by appellee. We can infer from the arguments presented by the parties that the appellants had drafted a version of the necessary documents that they felt were appropriate. Their efforts to convince the trial court that the appellees' documents suffered gaps, inconsistencies and improperly added terms must have as its foundation a good faith belief as to what language must be contained in the documents that would comprise a fair resolution of the dispute. Appellants did not provide the trial court with documents that they contended supply a resolution of the dispute. Instead, they were satisfied with finding fault with appellees' version and requesting additional time to negotiate.

{¶29} The negotiations to draft the documents to complete the settlement began in April 2019 and continued until June 2020 according to appellees' hearing brief and appellants concede that the parties have been working toward a resolution up to the date of the hearing. Appellants requested an addition sixty days to complete the settlement without offering any insight as to why, after over one year of good faith efforts to agree on settlement documents, the parties could resolve their differences in sixty days. Without a copy of the documents that the appellants would propose as a solution, the suggestion that the parties were close to resolving their disputes lacks objective support.

{¶30} The appellants also failed to take advantage of the opportunity to describe how they believed the remaining disputes should be resolved. They asserted that they were on the verge of a resolution that might be achieved with more time, suggesting that the issues remaining were either few or less contentious. Their optimism regarding the likelihood of an impending resolution lacked the support that a recitation of the remaining disputes would have supplied.

**{¶31}** The appellants' apparent reticence to disclose their ideal resolution of the dispute to the trial court is disturbing.  While we have insufficient evidence to conclude that appellants were not acting in good faith to reach an agreement, we can understand the appellees' concern that appellants were invested in negotiations, but not settlement.

**{¶32}** The trial court was clearly interested in settlement and made regular efforts to assist and encourage all parties to engage in discussions or file the necessary motions to bring the matter within the trial court's purview. Once the motion to enforce was filed, the trial court took steps to ensure that all parties had the opportunity to present their arguments and evidence for consideration before deciding.

**{¶33}** Appellants presented arguments to the trial court regarding their objections to the January 2020 Documents within their Memorandum Contra Appellees' Motion to Dismiss and their Hearing Brief.  Appellants introduced additional arguments in their appellate brief and incorporated by reference their remaining objections in the form of a color-coded copy of the exhibit that was submitted to the trial court at the July 2020 hearing.  We will first address the arguments appellants presented to the trial court in their Hearing Brief.

**{¶34}** Appellants contend that the scope of oil and gas rights included in the definition of "Disputed Area Properties" in the January 2020 Documents is much broader than what was required by the MSA because it includes oil and gas mineral rights which are not owned or held by any Plaintiffs. (Defendant\Appellants' Hearing Brief, p. 7).

**{¶35}** Paragraph 1 of the MSA obligates the Willowbrook parties to quitclaim to plaintiffs all of their interest in five categories of properties and concludes by describing the intent of the agreement is for the Willowbrook parties "to quitclaim all of their rights in

oil and gas wells, oil and gas leases, pipelines and rights-of-way, and oil and gas mineral interests {fee interests} held by the Plaintiffs." Appellants conclude that the "scope of oil and gas rights included in the definition of "disputed area properties" in plaintiff's 1-31-20 settlement agreement is much broader than that in includes oil and gas mineral rights which are not owned or held by any plaintiffs."

**{¶36}** The appellants provided no evidence, explanation or argument to support their conclusion the provisions in the two documents were inconsistent, nor did they identify the mineral rights that they contend should be excluded. And appellants forfeited the opportunity to supply the trial court with a version of these terms that, in their view, were consistent with each other. Instead, the appellant offers only a conclusion that the terms were inconsistent leaving the trial court to conclude otherwise based on its review of the documents and the arguments presented.

**{¶37}** Consequently, we find that the trial court's rejection of this alleged conflict was supported by the record and not an abuse of discretion.

**{¶38}** Appellants next argue that "[t]he conveyance language in Plaintiffs' 1-31-20 Exhibit H, the quitclaim assignment intended to carry out the requirements of Paragraph 1 of the Plaintiffs' 1-31-20 Settlement Agreement, also requires a much broader transfer of property than that required by Paragraph 1 of the MSA." (Defendants' Hearing Brief, p. 7.).  Appellant argues that Paragraph 1 of the MSA requires the transfer of "property that is specifically identified and other property owned by 'Red Hill Development'" and that this provision requires only the transfer of interests in property owned by Red Hill Development.  The full text paragraph 1 of the MSA is not so limited and includes:

rights in: (1) Group 3 Leases and Non-Group 3 Leases; (2) Group 3 Wells and Non-Group 3 Wells; (3) oil and gas mineral rights owned by RHDK Investments; (4) Group 3 Pipelines and Group 3 ROWs; and (5) Non-Group 3 Pipelines and Non-Group 3 ROWs. The intent is for the Willowbrook Parties to quitclaim all of their rights in oil and gas wells, oil and gas leases, pipelines and rights-of-way, and oil and gas mineral interests {fee interests} held by the Plaintiffs.

**{¶39}** The appellants again rely on their conclusion to support the alleged inconsistency without offering any evidence, explanation or argument or supplying a modification that they believe is more appropriate.  The trial court had the discretion to disregard their conclusion and determine that the provisions were not inconsistent.

**{¶40}** We find sufficient evidence in the record to support the trial court's conclusion that this requirement does not add an essential term, but serves to fulfill the requirement of the MSA.

**{¶41}**  Appellants next argue that the January 2020 Documents add an essential term by requiring that a party denominated Hydrocarbons quitclaim assignment rights when that entity is not one of the "Willowbrook Parties" defined in paragraph 12 of the SIP. (Defendants' Hearing Brief p. 8).  The MSA does require that the release executed by the parties include a release of all claims by or on behalf of Hydrocarbons (MSA, ¶ 17). Further, the SIP notes that Hydrocarbons was the grantee of a transfer of interests in Willowbrook Leases I and II, and appellants claimed Hydrocarbons held an interest in appellees assets. (Appellant's Second Amended Counterclaim, ¶¶ 7, 24, 36, 84g.) Hydrocarbons, though not defined as a Willowbrook Party, played a crucial role in the

transactions described in the pleadings submitted by all parties. This part of the January 2020 Documents does not support appellants' contention that the trial court approved the addition of an essential term as there is sufficient evidence to demonstrate that the transfer by Hydrocarbons was included to fulfill the goals of the MSA.

**{¶42}** Appellants claim that the January 2020 Documents require that Defendant Willowbrook make a quitclaim assignment not required by the MSA/SIP because Willowbrook is not defined as one of the Willowbrook parties as defined in the SIP.

**{¶43}** Willowbrook is obligated to convey interests by paragraph five of the SIP as well as paragraph five of the MSA supporting the trial court's conclusion that the January 2020 Documents carry out the settlement agreement and do not contradict the settlement or add an essential term.

**{¶44}** Appellants next cite an alleged conflict between the royalty calculation language in the MSA and a provision in the January 2020 Documents which provides ""Notwithstanding anything to the contrary in this Agreement, RHDK Oil & Gas, LLC may sell the Oil and Gas produced and sold so long as the price received from those affiliates is equal to or greater than the price that an unaffiliated third party would pay for the Oil and Gas produced and sold from the Lands."  Appellant contends that the latter provision directly contradicts the MSA and sets a different standard for calculation of the royalty.

**{¶45}** First, we note neither the MSA nor the SIP addresses sales to affiliated entities.  Further, the provision quoted by appellants appears in paragraph 2 of the SIP and applies only to "gross overriding royalty interests" and does not by its terms apply generally.  The language in the January 2020 Documents does not support the existence of a conflict as it clearly addresses the question of sales to affiliated entities and insures

that any sale to an affiliated entity must be at a price equal or greater than what an unaffiliated entity would pay. We hold that the trial court did not abuse its discretion by rejecting this provision.

{¶46} The appellants presented no further written argument, but did comment that:

> "[e]xplaining to the Court why Plaintiffs' 1-31-2020 Settlement Documents do not comply with the Settlement Agreement can most effectively be presented orally to the Court at the Hearing, provided Plaintiffs confirm those are the documents which are referred to in the Motion. Therefore, Defendants will not set forth herein their arguments as to why Plaintiffs' 1-3 1-2020 Settlement Documents do not comply with the MSA/SIP.

(Defendants' Memorandum In Opposition To Plaintiffs' Motion To Enforce Settlement P. 14.)

{¶47} We have reviewed the transcript of that hearing and find no additional argument or description regarding any particular term of the January 2020 Documents, but only a reference to a color-coded version of that document that was presented to the trial court. A copy of that document was included as an appendix to the briefs on appeal. That document includes the following key to the color coding:

> Language highlighted in Blue: Indicates Defendants' belief that the language contradicts or is inconsistent with language in the settlement agreement.

Language highlighted in Yellow: Indicates Defendants' belief that the language is not required by the settlement agreement and is not necessary to carry out the stated intent of the parties and should be eliminated.

Language highlighted in Green: Indicates Defendants' belief that the language is factually inaccurate, inconsistent with other language in the document, or is improper for some other reason.

**{¶48}** This document contains no further argument or explanation regarding the appellants' conclusion that the language in the January 2020 Documents is contradictory, inconsistent, not required or unnecessary, factually inaccurate or unnecessary for some other reason. The highlighted sections are not cross-referenced to any section of the MSA or SIP and the exhibit includes no argument supporting their conclusions regarding those highlighted excerpts. Appellants' reference to this document is perilously close to incorporating argument by reference to other sources, a strategy not permitted by the Rules of Appellate Procedure. *Thomas v. Vesper,* 5th Dist. Ashland No. 02 COA 20, 2003-Ohio-1856, ¶ 31. "[A]n appellant's brief is required to present "[a]n argument containing the contentions of the appellant with respect to [the] assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies," as per the requirements set forth in App.R. 16(A)(7). (Citations omitted.) *Tripodi Family Tr. v. Muskingum Watershed Conservancy Dist.,* 5th Dist. Tuscarawas No. 2007 AP 09 0056, 2008-Ohio-6902, ¶ 29.

**{¶49}** And we are unable to discern any argument within this document simply using the color key and the record. Appellants presented a position on a paragraph,

phrase or date within this document and relied upon this court and the trial court to divine their rational, argument and solution. "If evidence, authority, and arguments exist that can support an assignment of error, it is not the duty of the appellate court to root it out." *Sutton v. Ohio Dept. of Edn.,* 2017-Ohio-105, 80 N.E.3d 1238, ¶ 35 (8th Dist.) as quoted in *Young v. Kaufman,* 8th Dist. No. 104990, 2017-Ohio-9015, 101 N.E.3d 655, ¶ 44. Courts of appeals "cannot and will not search the record in order to make arguments on appellant['s] behalf." *Helman v. EPL Prolong, Inc.,* 139 Ohio App.3d 231, 240 (7th Dist.2000) as quoted in *Village of N. Kingsville v. Beals*, 11th Dist. Ashtabula No. 2017-A-0087, 2018-Ohio-3012, ¶ 8. Consequently, we find that the color-coded document does not present argument we may consider.

**{¶50}** Appellants include several arguments in their brief describing what they perceive as material problems with the January 2020 Documents, but these arguments were not made to the trial court. While appellants did provide the trial court with the color-coded exhibit described above, they did not include the arguments they now present to this court in that exhibit, other pleadings or through testimony. The trial court provided appellants the opportunity to present these arguments at the hearing conducted on July 24, 2020, but they chose not to do so.

**{¶51}** "A first principle of appellate jurisdiction is that a party ordinarily may not present an argument on appeal that it failed to raise below." *State v. Wintermeyer,* 158 Ohio St.3d 513, 2019-Ohio-5156, 145 N.E.3d 278, ¶ 10, citing *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121, 679 N.E.2d 1099 (1997). It has been noted that " 'the most measured sense of judicial restraint confines this court to passing upon only those issues developed below.' " *State ex rel. Parisi v. Dayton Bar Assn. Certified Grievance Commt.,* 159 Ohio

St.3d 211, 2019-Ohio-5157, 150 N.E.3d 43, ¶ 35 (Kennedy, J., concurring in part and concurring in judgment only in part), quoting *Fulmer v. Insura Property & Cas. Co.,* 94 Ohio St.3d 85, 100, 760 N.E.2d 392 (2002) (Cook, J., dissenting). *State v. Harper,* 160 Ohio St.3d 480, 2020-Ohio-2913, 159 N.E.3d 248. The Supreme Court of Ohio observed in *Sizemore v. Smith,* 6 Ohio St.3d 330, 333, 453 N.E.2d 632 (1983), fn. 2, "justice is far better served when it has the benefit of briefing, arguing, and lower court consideration before making a final determination." *State v. Quarterman,* 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 19.  This Court stated in *Hadley v. Figley,* 2015-Ohio-4600, 46 N.E.3d 1129, ¶ 22, quoting *Snyder v. Snyder*, 5th Dist. Richland No. 2006 CA 0022, 2006-Ohio-4795, ¶ 19–20:

> "It is well established that a party cannot raise any new issues or legal theories for the first time on appeal." *Dolan v. Dolan,* 11th Dist. Nos. 2000–T–0154 and Nos. 2001-T-2003, 2002-Ohio-2440, [2002 WL 1012575], at ¶ 7, citing *Stores Realty Co. v. Cleveland* (1975), 41 Ohio St.2d 41, 43, 322 N.E.2d 629. "Litigants must not be permitted to hold their argument in reserve for appeal, thus evading the trial court process." *Nozik v. Kanaga* (Dec. 1, 2000), 11th Dist. No. 99-L-193, [2000 WL 1774136], 2000 Ohio App. LEXIS 5615.

**{¶52}**  *Accord Niskanen v. Giant Eagle, Inc.,* 122 Ohio St.3d 486, 2009-Ohio-3626, 912 N.E.2d 595, ¶ *34* (* * *it is well settled that "[a] party who fails to raise an argument in the court below waives his or her right to raise it here.) and *State ex rel. Zollner v. Indus. Comm.*, 66 Ohio St.3d 276, 278, 611 N.E.2d 830 (1993) (A party who fails to raise an argument in the court below waives his or her right to raise it here.).

**{¶53}** Appellants present many new arguments in their brief that were not presented for consideration of the trial court and, therefore, they have waived their right to raise them for the first time in their appeal.  We will not consider the arguments that have not been presented to the trial court.

**{¶54}**  We find that, after examining the entire record, there is sufficient competent and credible evidence to support the judgment rendered by the trial court. *Seasons Coal Company v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1978). *Trickey v. Trickey*, 158 Ohio St. 9, 13, 106 N.E.2d 772 (1952). The trial court's decision was not arbitrary, unconscionable, or unreasonable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). We hold that the trial court did not abuse its discretion by finding that the January 2020 Documents, as modified by its order, satisfied the requirement of the settlement agreement to draft documents to give effect to its terms.

**{¶55}** The appellants assignment of error is denied and the decision of the Tuscarawas County Court of Common Pleas is affirmed.


By: Baldwin, P.J.

Wise, John, J. and

Delaney, J. concur.