[Cite as *Estate of Campbell v. US Claims OPO, L.L.C.*, 2022-Ohio-711.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| ESTATE OF ANQUEZ CAMPBELL, ET AL. | : | JUDGES: |
| | : | |
| | : | |
| | : | Hon. Earle E. Wise, Jr., P.J. |
| Plaintiff-Appellant | : | Hon. William B. Hoffman, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 2021CA00086 |
| | : | |
| US CLAIMS OPO LLC DBA US CLAIMS | : | |
| | : | |
| | : | |
| | : | |
| Defendant-Appellee | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Stark County Court of Common Pleas, Case No. 2021CV00022

JUDGMENT:      AFFIRMED

DATE OF JUDGMENT ENTRY:      March 10, 2022

APPEARANCES:

For Plaintiff-Appellant:

JAY E. KRASOVEC
DAVID L. FIRESTINE
BETSY B. HARTSCHUH
405 Rothrock Road, #103
Akron, OH 44321

For Defendant-Appellee:

OWEN J. RARRIC
MATTHEW W. ONEST
4775 Munson St. NW
P.O. Box 36963
Canton, OH 44735-6963

*Delaney, J.*

{¶1} Plaintiff-Appellant Natasha Wells-Niklas appeals the July 16, 2021 judgment entry of the Stark County Court of Common Pleas.

## FACTS AND PROCEDURAL HISTORY

### A Wrongful Death

{¶2} On July 12, 2014, Anquez Campbell, age 15 years old, drowned while swimming at a business owned by Baylor Beach Park, Inc., located in Stark County, Ohio. At the time of his death, Anquez Campbell was survived by his mother and next of kin, Ida Campbell.

{¶3} Ida Campbell retained Plaintiff-Appellant Natasha Wells-Niklas, an attorney with Mills, Mills, Fiehly & Lucas, LLC, to represent her legal interests after her son's death.

### Non-Recourse Civil Litigation Advance

{¶4} On or about October 22, 2015, Ida Campbell, individually and as Administratrix/Executor and beneficiary of the Estate of Anquez Campbell, executed a document entitled, "Purchase, Sale, Assignment and Equitable Lien Agreement" ("Agreement") with Defendant-Appellee US Claims OPO LLC dba US Claims ("USC"). USC is a limited liability corporation that, pursuant to a contract, advances money to plaintiffs involved in personal injury litigation in exchange for purchasing a portion of the potential proceeds of the litigation. The transaction is called a "non-recourse civil litigation advance." *See* R.C. 1349.55(A)(1). USC's principal place of business is in Moorestown, New Jersey. In the Agreement, Ida Campbell agreed to sell an interest in her anticipated proceeds from the wrongful death action to USC. USC paid Ida Campbell $32,459.86, which included fees, costs, and a payoff to a prior legal funding company.

{¶5} The terms of the Agreement included an arbitration provision. The arbitration provision stated in pertinent part:

**8. AGREEMENT TO ARBITRATE**

**a. Agreement**. USC and I agree that any and all controversies, claims, disputes, suits or causes of action arising out of, or relating to this Agreement, to the negotiations thereto related or to the breach thereof, or to the formation, validity and/for enforceability of this agreement to arbitrate or the Agreement (each, a "Claim"), including the question of arbitrability of any such Claim, *shall* be settled by binding arbitration. This agreement to arbitrate is binding upon and inures to the benefit of each of USC's and my respective heirs, executors, administrators, successors and assigns, as applicable (each, a "Party," and collectively, the "Parties").

* * *

**d. The Arbitrator**. The arbitration shall be held before a single neutral arbitrator, to be selected by agreement between the Parties from the roster of neutrals of the New Jersey Academy of Mediators and Arbitrators for the region of central New Jersey (the Roster").

* * *

**e. Arbitration Process**. The arbitration will be held in central New Jersey.

{¶6} As part of the Agreement, Ida Campbell signed page one of Exhibit A, an "Irrevocable Letter of Instruction to Counsel." The letter, addressed to Attorney Wells-Niklas, states in pertinent part:

This letter, along with a copy of the [Agreement], will confirm that I am irrevocably assigning an interest in the proceeds from any judgment or settlement of my pending Case (as described above) to [USC].

The letter instructed Attorney Wells-Niklas to, among other duties, satisfy USC's lien pursuant to the Agreement before disbursing any settlement or judgment proceeds.

{¶7}  Also made part of the Agreement, Attorney Wells-Niklas signed page two of Exhibit A, entitled an "Acknowledgement of Counsel" ("Acknowledgement"), which states:

I, Natasha Wells Niklas, Esquire, as your attorney, acknowledge the receipt of the above Irrevocable Letter of Instruction to Counsel (the "Letter") and further acknowledge notice of the fact that you, my client(s) have granted USC a security interest and lien in the Proceeds of your Case under the Agreement. I acknowledge that, pursuant to the Agreement, you have assigned a portion of your Proceeds to USC, and that additional portions of your Proceeds may be assigned by you to USC through one or more Addenda subject to the terms of the Agreement. I also acknowledge that I will follow all of your irrevocable instructions outlined in the Letter and will honor the terms of your Agreement, as it may be amended by one or more Addenda. * * * I further represent that all disbursements of funds in connection with the Case, including your Proceeds, will be through my attorney trust account, and that I will take the necessary steps so that all payments made by the defendant or insurer in connection with the case are made directly to me or my firm for deposit in my attorney trust account. Prior

to making any distribution to you or anyone else, I will contact USC to ascertain the amount due and will not pay any portion of your proceeds, other than the "Permitted Liens", to you or on your behalf until USC's lien is satisfied in full. * * * In the event of a dispute with USC, I agree that the only disbursement that will be made from the proceeds will be for Permitted Liens, that the remainder of the proceeds will be held by me in my attorney trust account until such dispute is resolved, and that any such dispute would be subject to arbitration under Section 8 of the Agreement.

* * *

I certify that I am the attorney of record in the above-captioned case. I further certify that I received a copy of and reviewed the Agreement, that all costs and fees have been disclosed by USC, including the annualized rate of return applied to calculate the amount to be paid by you, that I am being paid on a contingency basis per a written fee agreement, and that the representation set forth in the Agreement are true and accurate to the best of my knowledge. This acknowledgement and certification shall be deemed a material part with the USC's Agreement.

{¶8} The miscellaneous terms of Agreement stated that, "together with the Disclosure and Exhibit, [this] constitutes the entire agreement and understanding of the parties with respect to the purchase of the specific portion of the Proceeds contemplated hereby * * *." If any portion of the Agreement was deemed invalid or unenforceable, "it would not affect the validity or enforceability of (i) any other part of this Agreement, and

the Agreement shall be modified to the extent legally possible to legally carry out the intent of this Agreement and (ii) any Agreement between USC and any other party."

{¶9} On or about December 29, 2015, Ida Campbell executed a document entitled, "Addendum #1 to Purchase, Sale, Assignment and Equitable Lien Agreement" ("Addendum"), whereby Ida Campbell agreed to sell an additional portion of the proceeds of the wrongful death action to USC. Pursuant to the Addendum, USC paid Ida Campbell $11,000, inclusive of fees and costs. The Addendum contained a provision where, "Per the Agreement (as it may have been amended), the terms and conditions of which are incorporated by reference and reaffirmed hereby in their entirety, I sold USC a portion of my Proceeds * * *. This Addendum and the rights and obligations of the parties thereto related are subject to the terms and conditions of the Agreement." Attorney Wells-Niklas signed the Addendum, stating, "I hereby acknowledge the purchase and sale of the Additional Property by my client(s), as set forth above."

**Wrongful Death Action**

{¶10} On January 13, 2016, the Stark County Probate Court appointed Ida Campbell as the Administrator of the Estate of Anquez Campbell.

{¶11} On March 15, 2016, Ida Campbell, as Administrator of the Estate of Anquez Campbell, filed a wrongful death action against Baylor Beach Park, Inc. in the Stark County Court of Common Pleas. Attorney Wells-Niklas represented Ida Campbell. On February 27, 2017, Attorney Wells-Niklas notified the trial court she had changed her address due to a change in law firms. The wrongful death action was dismissed without prejudice on March 8, 2017.

{¶12} Ida Campbell refiled the wrongful death action on May 18, 2017, represented by Attorney Wells-Niklas.

{¶13} Ida Campbell passed away on September 18, 2018. At the time of her death, Ida Campbell was survived by her next of kin and minor son, Victor Perry, and her adult son, William Campbell. Pursuant to the Last Will and Testament of Ida Campbell, Paris Davie was named the Executor of the Estate of Ida Campbell. An estate was opened for Ida Campbell and the USC non-recourse civil litigation advance was not made part of her estate.

{¶14} On January 22, 2019, the Stark County Probate Court named Paris Davie as the successor Administrator of the Estate of Anquez Campbell.

{¶15} On February 6, 2019, the trial court substituted Paris Davie, Administrator of the Estate of Anquez Campbell, as the plaintiff in the wrongful death action.

{¶16} On September 20, 2019, an Application to Approve Settlement and Distribution of Wrongful Death and Survival Claims was filed in the Estate of Anquez Campbell pending before the Stark County Probate Court. The application stated there had been an offer of full settlement in the wrongful death action in the amount of $325,000. The narrative statement in support of the application stated that following the payment of costs, case expenses, and a contingent fee agreement attorney's fee, the wrongful death beneficiaries would receive a net of $181,999.56. The wrongful death beneficiaries listed in the application were the Estate of Ida Campbell, Victor Perry, and William Campbell. The application detailed the proposed distribution of the assets, but it did not provide for any payments to USC.

{¶17} On December 30, 2019, the Stark County Probate Court approved the settlement and distribution of the wrongful death claims. The Estate of Ida Campbell received $3,000; Victor Perry received $110,000; William Campbell received $50,000; and the Victor Perry Guardianship Account received $25,147.61. The court ordered payment of $25,836.29 to the attorney for reimbursement of case expenses and $108,333.32 for attorney fees.

### USC Demand for Arbitration

{¶18} On May 20, 2020, USC notified Paris Davie, William Campbell, attorney Nicholas Laudato, and Attorney Wells-Niklas by letter that it was aware the wrongful death action had been settled for $325,000. USC stated it was not notified of the death of Ida Campbell, the settlement, or probate proceedings until it received a letter from Attorney Wells-Niklas dated February 17, 2020. The application to approve the settlement and distribution of the wrongful death proceeds did not provide for any payment to USC.

{¶19} Because USC had not been paid its "Property" as described in the Agreement, pursuant to the Agreement, USC initiated a Demand for Arbitration. It stated in the letter that under paragraph 7(d) of the Agreement, a single arbitrator was selected by agreement of the parties from the Roster of Neutrals of the New Jersey Academy of Mediators and Arbitrators for the region of Central New Jersey. USC selected Richard Steen, Esq.

{¶20} Arbitration before the selected mediator was scheduled for January 11, 2021. Attorney Wells-Niklas challenged the jurisdiction of the Arbitrator to hear the case. By order on July 15, 2020, the Arbitrator permitted the parties to submit applications and briefs on the issue. On October 20, 2020, the Arbitrator determined it had jurisdiction over

disputes arising out the Agreement based on the terms of the Agreement and Acknowledgment. By signing the Acknowledgment, the Arbitrator determined that Attorney Wells-Niklas was required to participate in arbitration and her application challenging jurisdiction was denied.

{¶21} On November 6, 2020, USC filed an Amended Demand for Arbitration. In the amended demand for arbitration, USC dismissed its arbitration demand against William Campbell and attorney Nicholas Laudato; the only remaining parties were Paris Davie, as Executor of the Estate of Ida Campbell and Attorney Wells-Niklas. In the amended arbitration demand, USC alleged that, "[d]espite Attorney Niklas's acknowledgment and awareness of USC's lien against the Proceeds of the Wrongful Death Case, USC has not been paid. In sum, the Administrator of the Estates of both Ida Campbell and Anquez Campbell, with the assistance of Atty [sic] Niklas and her law firm, sought to distribute Proceeds that belonged to USC to the attorneys, heir, and beneficiaries. As of this date, USC is owed a total of $121,006.00."

**Declaratory Judgment and Injunctive Relief**

{¶22} On January 8, 2021, the Estate of Anquez Campbell, Paris Davie, William Campbell, Victor Perry, and Attorney Wells-Niklas filed a Complaint with the Stark County Court of Common Pleas requesting declaratory judgment and injunctive relief. In their request for declaratory relief, the plaintiffs argued that as non-parties to the USC contract, they had no obligation to be forced into arbitration with USC. They requested injunctive relief to enjoin USC from compelling their presence at the January 11, 2021 arbitration.

{¶23} Simultaneously, the plaintiffs filed a Motion for Temporary Restraining Order and Preliminary and Permanent Injunctive Relief to prevent their attendance at the

January 11, 2021 arbitration. The trial court granted the TRO and set the matter for an evidentiary hearing on January 21, 2021.

{¶24} On January 20, 2021, USC filed a Combined Brief in opposition to the plaintiffs' motion for preliminary junction and Civ.R. 12(B)(6) motion to dismiss the complaint of Attorney Wells-Niklas. In the motion, USC first argued the trial court should deny the motion for preliminary injunction and/or declaratory judgment action as to the Estate of Anquez Campbell, Paris Davie, William Campbell, and Victor Perry because there was no justiciable controversy between those parties and USC. The amended arbitration demand dismissed those parties because they were not parties to the Agreement. USC next argued that Attorney Wells-Niklas' complaint failed because it did not contain sufficient factual allegations to plausibly state a claim. When Attorney Wells-Niklas signed the Acknowledgement, she expressly agreed to be bound to the terms of the Agreement, which included an arbitration provision. The Acknowledgement was a material part of the Agreement and by its terms, incorporated into the Agreement.

{¶25} Attorney Wells-Niklas filed a response to the Civ.R. 12(B)(6) motion to dismiss. In her response, she reiterated her request for declaratory judgment that she was not a party to the Agreement. She next argued that pursuant to R.C. 1349.55, the Ohio Rules of Professional Conduct defined her responsibilities as the attorney for the Estate of Anquez Campbell, not the terms of the Acknowledgment. Further, while this was a matter of first impression in Ohio, other state courts have found that a letter of acknowledgement signed by the attorney pursuant to a non-recourse civil litigation advance did not create a contractual relationship between the non-recourse lender and the attorney, thereby preventing enforcement of an arbitration clause against the attorney.

{¶26} In reply, USC asserted the question presented to the trial court was not whether Attorney Wells-Niklas was liable under the terms of the Acknowledgement or Agreement. The question was whether Attorney Wells-Niklas agreed to arbitrate any dispute under the Agreement when she signed the Acknowledgment. USC noted that Attorney Wells-Niklas did not dispute in her briefing that she signed the Acknowledgement that included an agreement to arbitrate any dispute under the Agreement. Under plain contract law and case law addressing the issue, USC argued Attorney Wells-Niklas was contractually obligated to participate in arbitration, where the question of her liability under the Agreement would be determined.

{¶27} On July 16, 2021, the trial court issued its judgment entry granting the Civ.R. 12(B)(6) motion of USC. The trial court first dismissed the Estate of Anquez Campbell, Paris Davie, William Campbell, and Victor Perry as plaintiffs because they were not named in the Amended Demand for Arbitration. The trial court next found the Agreement and Acknowledgement were interrelated documents that together governed the transaction between Ida Campbell and USC. By its terms, the Acknowledgment signed by Attorney Wells-Niklas constituted a material part of the Agreement and Addendum, which contained an express agreement to arbitrate any dispute under the Agreement. Therefore, Attorney Wells-Niklas was bound by the arbitration clause.

{¶28} The trial court dismissed the Complaint for Declaratory Judgment and Injunctive Relief to allow all claims and issues in the matter be arbitrated in the pending New Jersey arbitration. It is from this judgment that Attorney Wells-Niklas now appeals.

**ASSIGNMENT OF ERROR**

{¶29} Attorney Wells-Niklas raises one Assignment of Error:

{¶30} "THE TRIAL COURT ERRED IN DISMISSING NIKLAS' ACTION FOR PRELIMINARY AND PERMANENT INJUNCTION PRECLUDING ARBITRATION OF CLAIMS BROUGHT AGAINST HER BASED ON ITS HOLDING THAT AN ATTORNEY ACKNOWLEDGING INSTRUCTIONS GIVEN BY A CLIENT REGARDING REPAYMENT OF A NONRECOURSE CIVIL LITIGATION ADVANCE SUBJECTS THE ATTORNEY TO CIVIL LIABILITY AND THE ADVANCE CONTRACT'S COMPULSORY ARBITRATION CLAUSE."

## ANALYSIS

{¶31} In her sole Assignment of Error, Attorney Well-Niklas argues the trial court erred when it granted USC's motion to dismiss. Upon our de novo review, we disagree.

## Standard of Review

{¶32} Our standard of review on a Civil Rule 12(B) motion to dismiss is de novo. *Huntsman v. State*, 5th Dist. Stark No. 2016CA00206, 2017-Ohio-2622, 2017 WL 1710432, ¶ 20, citing *Greeley v. Miami Valley Maintenance Contractors Inc.*, 49 Ohio St.3d 228, 551 N.E.2d 981 (1990). USC argued that Attorney Wells-Niklas' complaint should be dismissed for failure to state a claim. A motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint. *State ex rel. Hanson v. Guernsey County Bd. of Commissioners*, 65 Ohio St.3d 545, 605 N.E.2d 378 (1992). Under a de novo analysis, we must accept all factual allegations of the complaint as true, and all reasonable inferences must be drawn in favor of the nonmoving party. *Byrd v. Faber*, 57 Ohio St.3d 56, 565 N.E.2d 584 (1991). In order to dismiss a complaint pursuant to Civil Rule 12(B)(6), it must appear beyond doubt that

the plaintiff can prove no set of facts in support of the claim that would entitle plaintiff to relief. *York v. Ohio State Highway Patrol*, 60 Ohio St.3d 143, 573 N.E.2d 1063 (1991).

**Contract Interpretation to Determine Arbitrability**

{¶33} USC seeks to enforce the arbitration provisions of the Agreement against Attorney Wells-Niklas. Attorney Wells-Niklas raises multiple arguments as to why the trial court erred in dismissing her complaint for declaratory judgment and request for injunctive relief to bar USC from compelling her to arbitration. She first contends that under Ohio law governing non-recourse civil litigation advances, the liability of the attorney representing the consumer in the civil action is limited by the jurisdiction of the Ohio Rules of Professional Conduct. Second, Attorney Wells-Niklas argues that because she executed only the Acknowledgement, she is not bound to the terms of the Agreement as a party to the Agreement, including the arbitration provisions found in Section 8 of the Agreement.

{¶34} Upon examination, the narrow issue before this Court's is whether Attorney Wells-Niklas is subject to the terms of the arbitration provisions in the Agreement. We cannot reach the issue of any alleged liability under the Agreement until the matter of forum is determined.

{¶35} The Supreme Court of Ohio outlined four principles to guide determinations of arbitrability in *Council of Smaller Enterprises v. Gates, McDonald & Co.*, 80 Ohio St.3d 661, 687 N.E.2d 1352 (1998). It held:

> "The first principle is that '"arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." * * * This axiom recognizes the fact that arbitrators

derive their authority to resolve disputes only because the parties have agreed to submit such grievances to arbitration.' *AT & T Technologies*, 475 U.S. at 648–649, 106 S.Ct. at 1418, 89 L.Ed.2d at 655, quoting [*United Steelworkers of Am. v.*] *Warrior & Gulf* [*Navigation Co.* (1960) ], 363 U.S. [574] at 582, 80 S.Ct. [1347] at 1353, 4 L.Ed.2d [1409] at 1417.

"The second principle is that 'the question of arbitrability—whether a[n] * * * agreement creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.' *Id.*, 475 U.S. at 649, 106 S.Ct. at 1418, 89 L.Ed.2d at 656.

"The third rule is, 'in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims.' *Id.*, 475 U.S. at 649, 106 S.Ct. at 1419, 89 L.Ed.2d at 656.

"The fourth principle is that 'where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."' *Id.*, 475 U.S. at 650, 106 S.Ct. at 1419, 89 L.Ed.2d at 656, quoting *Warrior & Gulf, supra*, 363 U.S. at 582–588, 80 S.Ct. at

1353, 4 L.Ed.2d at 1417." *Council of Smaller Enterprises*, 80 Ohio St.3d at

665–666, 687 N.E.2d 1352.

*Academy of Medicine of Cincinnati v. Aetna Health, Inc.*, 108 Ohio St.3d 185, 2006-Ohio-

657, 842 N.E.2d 488, 2006 WL 357261, ¶¶ 10-14.

{¶36} "Both the Ohio General Assembly and Ohio courts have expressed a strong

public policy favoring arbitration." *Aljaberi v. Neurocare Ctr., Inc.*, 5th Dist. Stark No.

2018CA00154, 2019-Ohio-2181, 2019 WL 2354803, ¶ 20 quoting *Hayes v. Oakridge

Home*, 122 Ohio St.3d 63, 2009-Ohio-2054, 908 N.E.2d 408. Accordingly, there exists a

presumption in favor of arbitration when the disputed issue falls within the scope of the

arbitration agreement. *Premier Homes, Inc. v. Hanna Commercial, LLC*, 2019-Ohio-1336,

134 N.E.3d 888, ¶ 17 (5th Dist.) citing *Eagle v. Fred Martin Motor Co.*, 157 Ohio App.3d

150, 2004-Ohio-829, 809 N.E.2d 1161, ¶ 14 (9th Dist. Summit), citing *Williams v. Aetna

Fin. Co.*, 83 Ohio St.3d 464, 471, 700 N.E.2d 859 (1998). Arbitration agreements

interpreted under Ohio law are "valid, irrevocable, and enforceable, except upon grounds

that exist at law or in equity for the revocation of any contract." R.C. 2711.01(A); *Eagle* at

¶ 16.

{¶37} Because an arbitration clause in a contract is generally viewed as an

expression that the parties agreed to arbitrate disagreements within the scope of the

arbitration clause and is to be upheld just as any other provision in a contract should be

respected, we analyze this matter using the rules of contract interpretation. *Bentley v.

Cleveland Browns Football Co.*, 194 Ohio App.3d 826, 2011-Ohio-3390, 958 N.E.2d 585,

¶ 14 (8th Dist.) citing *Council of Smaller Ents. v. Gates, McDonald & Co.*, 80 Ohio St.3d

661, 668, 687 N.E.2d 1352 (1998). When confronted with an issue of contract

interpretation, our role is to give effect to the intent of the parties. *SPG, Inc. v. First St. Dev., L.L.C.*, 2016-Ohio-2824, 64 N.E.3d 340, ¶ 37 (5th Dist.) citing *Gen. Elec. Capital Corp. v. Tartan Fields Golf Club, Ltd.*, 5th Dist., 2013-Ohio-4875, 1 N.E.3d 463, ¶ 19 citing *Westfield Ins. Group v. Affinia Dev., L.L.C.*, 2012-Ohio-5348, 982 N.E.2d 132, ¶ 21 (5th Dist.). We will examine the contract as a whole and presume that the intent of the parties is reflected in the language of the contract. In addition, we will look to the plain and ordinary meaning of the language used in the contract unless another meaning is clearly apparent from the contents of the agreement. When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties. "As a matter of law, a contract is unambiguous if it can be given a definite legal meaning." *Sunoco, Inc. (R & M) v. Toledo Edison, Co.*, 129 Ohio St.3d 397, 2011-Ohio-2720, 953 N.E.2d 285, ¶ 37 citing *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 11.

{¶38} Attorney Wells-Niklas argues she only signed the Acknowledgement and therefore is not a party to the Agreement or bound by its terms, including the arbitration provision. This argument, however, asks this Court to ignore the plain language of the Acknowledgement that by her signature, Attorney Wells-Niklas agreed to be bound. Having reviewed the Agreement and the Acknowledgment attached to the complaint, we find for the reasons set forth below that Attorney Wells-Niklas is subject to the arbitration provision of the Agreement.

{¶39} First, by signing the Acknowledgment, Attorney Wells-Niklas expressly acknowledged receipt of the Agreement and the Irrevocable Letter of Instruction to Counsel, and she certified that she had reviewed the Agreement. She undeniably agreed

to follow all the "irrevocable instructions outlined in the Letter and will honor the terms of your Agreement, as it may be amended by one or more Addenda."

{¶40} Also, by signing the Acknowledgement, Attorney Wells-Niklas was aware that the Acknowledgement "shall be deemed a material part of the USC's Agreement." The Agreement likewise states that, "together with the Disclosure and Exhibit, [this] constitutes the entire agreement and understanding of the parties with respect to the purchase of the specific portion of the Proceeds contemplated hereby * * *." Page one of Exhibit A is the Irrevocable Letter of Instruction to Counsel and page two of Exhibit A is the Acknowledgment of Counsel. The plain language of the Agreement incorporates the Irrevocable Letter of Instruction to Counsel and the Acknowledgment to collectively constitute the Agreement.

{¶41} Second, the Agreement contains an arbitration provision in Section 8, wherein "all controversies, claims, disputes, suits or causes of action arising out of or relating to [the] Agreement, * * *, including the question of arbitrability of any such Claim, *shall* be settled by binding arbitration." (Emphasis sic.)

{¶42} Third, and most importantly to our determination of arbitrability, the Acknowledgement signed by Attorney Wells-Niklas contains its own express provision for arbitration:

> In the event of a dispute with USC, I agree that the only disbursement that will be made from the proceeds will be for Permitted Liens, that the remainder of the proceeds will be held by me in my attorney trust account until such dispute is resolved, and that any such dispute would be subject to arbitration under Section 8 of the Agreement.

{¶43} Attorney Wells-Niklas contends she is not a party to the Agreement and not bound by its terms. Using the four guidelines provided by the Ohio Supreme Court to determine arbitrability, we have reviewed the documents pursuant to the rules of contract interpretation and find that while Attorney Wells-Niklas may arguably not be a party to the Agreement, she is contractually bound to participate in arbitration based on the plain and unambiguous language of the Acknowledgment. The Acknowledgment, which is a material part of the Agreement, clearly states that if there is a dispute under the Agreement, the matter is to be resolved by arbitration. By signing the Acknowledgement, Attorney Wells-Niklas expressly agreed to be bound by the arbitration provision stated in the Acknowledgment and governed by the Agreement.

{¶44} In order to dismiss a complaint pursuant to Civil Rule 12(B)(6), it must appear beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle plaintiff to relief. We find by the plain language of the Acknowledgement, Attorney Wells-Niklas can prove no set of facts in support of her claim that she is not bound to participate in arbitration with USC. As to Attorney Wells-Niklas' remaining arguments, such as she is protected from liability by the Ohio Rules of Professional Conduct, we refer to the third rule of determining arbitrability: "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." *Council of Smaller Enterprises v. Gates, McDonald & Co.*, 80 Ohio St.3d 661, 687 N.E.2d 1352 (1998).

{¶45} The sole Assignment of Error is overruled.

**CONCLUSION**

{¶46} The judgment of the Stark County Court of Common Pleas is affirmed.

By: Delaney, J.,

Wise, Earle, P.J. and

Hoffman, J., concur.