[Cite as *Orange Twp. v. Internatl. Assn. of Fire Fighters Local 3816*, 2022-Ohio-2757.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| ORANGE TOWNSHIP, OHIO | : | JUDGES: |
| | : | Hon. Craig R. Baldwin, P.J. |
| Plaintiff-Appellant | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| IAFF LOCAL 3816 | : | Case No. 21 CAE 070033 |
| | : | |
| Defendant-Appellee | : | O P I N I O N |



CHARACTER OF PROCEEDING:          Appeal from the Court of Common
                                  Pleas, Case No. 20 CVH 120554



JUDGMENT:                         Affirmed



DATE OF JUDGMENT:                 August 8, 2022




APPEARANCES:

For Plaintiff-Appellant                    For Defendant-Appellee

BRIAN M. ZETS                              HENRY A. ARNETT
BENJAMIN D. HUMPHREY                        COLLEEN M. ARNETT
Two Miranova Place                          1335 Dublin Road
Suite 700                                   Suite 108-B
Columbus, OH  43215                         Columbus, OH  43215

*Wise, Earle, J.*

{¶ 1}  Appellant, Orange Township, Ohio, appeals the June 4, 2021 judgment entry of the Court of Common Pleas of Delaware County, Ohio, granting the motion to confirm arbitration award filed by appellee, International Association of Fire Fighters, Local 3816.

## FACTS AND PROCEDURAL HISTORY

{¶ 2}  In October 2016, Marcus Musser started working as a part-time firefighter for appellant and was assigned to 1-Unit at Station 361.  The grievants herein are fellow firefighter Bradley Belville and appellant's chain of command, Lieutenant David Martin and Captain John Hodges.  In September 2019, Musser requested a transfer and was subsequently transferred to 2-Unit.

{¶ 3}  Fire Chief Matt Noble interviewed Musser regarding his transfer request. Thereafter, Chief Noble conducted an investigation, held predisciplinary hearings, and in reports dated December 5, 2019, recommended the termination of the grievants for violating several sections of the Orange Township policies including threats or acts of physical violence against a coworker, abusive behavior, hazing, harassment of a coworker, conduct unbecoming, neglect of duty, and failure to meet essential job functions.

{¶ 4}  On December 9, 2019, the Orange Township Trustees held a special meeting to consider the Fire Chief's recommendation.  The trustees adopted the Fire Chief's findings and recommendation and terminated the grievants.

{¶ 5}  On December 11, 2019, the grievants, represented by appellee, filed a grievance contesting their terminations.  Arbitration hearings were held on August 20, and 21, 2020.  By award dated November 6, 2020, the arbitrator found appellant did not have

just cause to terminate the grievants and ordered the grievants be reinstated to their positions with no loss of seniority, receive back pay, and have their records expunged regarding their terminations. Specifically, the arbitrator found 1) there was insufficient evidence of "unwelcome harassment, hazing, bullying, or physical assault," 2) the grievants were not afforded proper due process, and 3) appellant did not put grievants on notice of the disciplinary consequences of their behavior.

{¶ 6} On December 7, 2020, appellant filed a motion and an application with the trial court to vacate or modify the arbitration award. On January 7, 2021, appellee filed a counterclaim and a motion to confirm the award. By judgment entry filed June 4, 2021, the trial court denied appellant's application and granted appellee's counterclaim, confirming the award.

{¶ 7} Appellant filed an appeal. This matter is now before this court for consideration. Assignment of error is as follows:

I

{¶ 8} "THE TRIAL COURT ERRED WHEN IT CONFIRMED THE ARBITRATOR'S AWARD AND FAILED TO VACATE OR MODIFY THE AWARD."

I

{¶ 9} In its sole assignment of error, appellant claims the trial court erred in confirming the arbitrator's award.

{¶ 10} In its application to the trial court, appellant argued the arbitrator modified the collective bargaining agreement (hereinafter "CBA") and/or exceeded his powers in his determination under R.C. 2711.10(D) which states: "the court of common pleas shall make an order vacating the award upon the application of any party to the arbitration if:

[t]he arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

{¶ 11} Pursuant to R.C. Chapter 2711, a trial court may confirm, vacate, or modify an arbitrator's award; however, as explained in *Board of Education of Findlay City School District v. Findlay Education Association,* 49 Ohio St.3d 129, 551 N.E.2d 186 (1990), syllabus:

 

1. Given the presumed validity of an arbitrator's award, a reviewing court's inquiry into whether the arbitrator exceeded his authority, within the meaning of R.C. 2711.10(D), is limited.

2. Once it is determined that the arbitrator's award draws its essence from the collective bargaining agreement and is not unlawful, arbitrary or capricious, a reviewing court's inquiry for purposes of vacating an arbitrator's award pursuant to R.C. 2711.10(D) is at an end. (R.C. 2711.10[D], construed and applied.)

 

{¶ 12} " '[A]n arbitrator's award departs from the essence of a collective bargaining agreement when: (1) the award conflicts with the express terms of the agreement, and/or (2) the award is without rational support or cannot be rationally derived from the terms of the agreement.' " *City of Alliance v. FOP/Ohio Labor Council, Inc.,* 5th Dist. Stark No. 2002CA00195, 2003-Ohio-223, ¶ 20, quoting *Ohio Office of Collective Bargaining v. Ohio Civil Service Employees Association, Local 11,* 59 Ohio St.3d 177, 572 N.E.2d 71 (1991), syllabus. "An arbitrator's award draws its essence from a collective bargaining agreement when there is a rational nexus between the agreement and the award, and where the

award is not arbitrary, capricious or unlawful." *Mahoning County Board of Mental Retardation & Developmental Disabilities v. Mahoning County TMR Education Association,* 22 Ohio St.3d 80, 488 N.E.2d 872 (1986), paragraph one of the syllabus.

{¶ 13} As explained by the Supreme Court of Ohio in *Goodyear Tire & Rubber Co. v. Local Union 200,* 42 Ohio St.2d 516, 520, 330 N.E.2d 703 (1975):

Were the arbitrator's decision to be subject to reversal because a reviewing court disagreed with findings of fact or with an interpretation of the contract, arbitration would become only an added proceeding and expense prior to final judicial determination. This would defeat the bargain made by the parties and would defeat as well the strong public policy favoring private settlement of grievance disputes arising from collective bargaining agreements.

Ohio's statutory scheme in R.C. 2711.10 thus limits judicial review of arbitration to claims of fraud, corruption, misconduct, an imperfect award, or that the arbitrator exceeded his authority.

{¶ 14} As explained by our colleagues from the Second District in *Piqua v. Fraternal Order of Police,* 185 Ohio App.3d 496, 2009-Ohio-6591, 924 N.E.2d 876, ¶ 18 (2d Dist.): "a trial court may not substitute its judgment—its view of the facts or law—for that of the arbitrator. * * * Critically then, in reviewing an arbitrator's award, the court must distinguish between an arbitrator's act in excess of his powers and an error merely in the way the arbitrator executed his powers. The former is grounds to vacate; the latter is

not."  "Generally, if the arbitrator's award is based on the language and requirements of the agreement, the arbitrator has not exceeded his powers."  *Piqua* at ¶ 22.

{¶ 15} "When reviewing a decision of a common pleas court confirming, modifying, vacating, or correcting an arbitration award, an appellate court should accept findings of fact that are not clearly erroneous but decide questions of law de novo."  *Portage County Board of Developmental Disabilities v. Portage County Educators' Association for Developmental Disabilities*, 153 Ohio St.3d 219, 2018-Ohio-1590, 103 N.E.3d 804, syllabus.  "The substantive merits of the original arbitration award are not reviewable on appeal absent evidence of material mistake or extensive impropriety."  *Northern Ohio Sewer Contractors., Inc. v. Bradley Development Co.*, 159 Ohio App.3d 794, 2005-Ohio-1014, 825 N.E.2d 650, ¶ 17 (8th Dist.).

{¶ 16} Article 25 of the CBA governs "Grievance Procedure" and states the following in pertinent part:

**Section 25.6**  * * * The Arbitrator shall have no authority to alter, amend, modify, add to, or subtract from the specific provisions, or terms, of the collective bargaining agreement.

**Section 25.8**  The decision of the Arbitrator shall be final and binding upon the Union, the employees, and the Township.

{¶ 17} Article 7 of the CBA governs "Discipline" and states the following in pertinent part:

**Section 7.4**  The Employer retains the right to discharge, suspend and discipline any non-probationary employee(s) for just cause.  For lesser forms of misconduct, discipline will normally be applied in a progressive manner.  Progressive discipline shall take into account the nature of the violation, the employee's record of discipline and the employee's record of performance and conduct.

**Section 7.6**  Notwithstanding any other provisions of this Agreement all matters relating to disciplinary actions against non-probationary employee shall be subject to the Grievance and Arbitration Procedures herein contained.

{¶ 18} Section 7.7 lists a range of disciplinary actions which may be imposed "[d]epending upon the seriousness of the conduct": verbal counseling, verbal reprimand with written summary, written reprimand, suspension up to 30 calendar days, and the last one, subsection (E), suspension with recommendation for dismissal, which states:

With this action the employee is suspended pending a hearing by the Fire Chief.  A written report must be filed by the Chief outlining the offense with a copy to the employee.  The Fire Chief will decide whether to recommend the dismissal of the employee to the Orange Township Board of Trustees. The Board will make the final decision.  The Trustees may also in their sole discretion initiate dismissal.  In the event the Board initiates the dismissal the process will go directly to the Board.

{¶ 19} In its appellate brief at 11, appellant first argues the arbitrator exceeded his powers in determining the grievants were not afforded proper due process. In his November 6, 2020 award at 23, the arbitrator stated, "[j]ust cause requires a fair and independent investigation" and concluded, "[t]he investigative process used in this case did not constitute a fair and independent investigation." The arbitrator based this conclusion on the following at 22:

In this case, Chief Noble acted as the investigator. He conducted all of the interviews. He made the disciplinary recommendation. He acted as the Hearing Officer at the pre-disciplinary hearing. Following the pre-disciplinary hearing, he recommended that the Board of Trustees discharge the Grievants.

Chief Noble provided the Trustees with his investigative report and his Hearing Officer report. No other management official had any input into the reports. The Trustees followed the disciplinary recommendations in Chief Noble's reports. The Trustees did not hear from any witnesses. They did not conduct an independent review. They made a decision based on the recommendations of Chief Noble.

{¶ 20} The arbitrator questioned why there was not an independent review of the investigation. In its June 4, 2021 judgment entry at 7, the trial court found the arbitrator "did not exceed his authority and did not create a new process under the CBA for investigating misconduct and terminating employees." We disagree.

{¶ 21} In this case, the Fire Chief, along with HR/Communications Manager Amanda Sheterom, conducted over twenty interviews, including Musser and the three grievants. Township's Exhibit 1. The Fire Chief conducted pre-disciplinary hearings wherein the three grievants were present and represented by counsel and union officials. Township's Exhibits 6, 7, and 8. The Fire Chief filed a written report and submitted his recommendation of dismissal to the Board. *Id.* The Board then held executive sessions to consider the discipline, demotion, and/or dismissal of the grievants. Township's Exhibit 9. Again, the three grievants were present. *Id.* The Board made the final decision to adopt the findings and recommendations of the Fire Chief and terminated the grievants.

{¶ 22} We find Section 7.7(E) of the CBA was followed. Nothing in the CBA requires an independent review of the investigation. The grievants received what they bargained for in the CBA. We agree the arbitrator exceeded his powers in determining the grievants were not afforded proper due process.

{¶ 23} In its appellate brief at 14, appellant next argues the arbitrator exceeded his powers in determining it did not put the grievants on notice of the disciplinary consequences of their behavior. In his award at 23, the arbitrator found appellant "never notified the Grievants that they were engaging in improper behavior prior to discharging them. When an employer wants to prohibit behavior that it has tolerated in the past, it must take action to notify employees of the change in policy." The arbitrator cited to Section 6(3) of the "Guiding Principles" for the Captain Position which provides, "[c]ounseling shall be utilized ahead of any formal discipline, unless the infraction is severe enough there is no choice but to begin the formal discipline process." The arbitrator determined at 24, "[i]f employees continue to engage in objectional behavior,

the situation must be addressed by progressive discipline, as required by the collective bargaining agreement."

{¶ 24} In its appellate brief at 15, appellee noted the arbitrator relied on rules outside the CBA, the "Guiding Principles" for the Captain Position, to conclude the CBA required progressive discipline. Section 6(2) of the "Guiding Principles" instructs a captain to "[a]lways follow the current Collective Bargaining Agreement when it comes to formal discipline." As cited above in ¶ 17, Section 7.4 of the CBA states appellant "retains the right to discharge, suspend and discipline any non-probationary employee(s) for just cause. For lesser forms of misconduct, discipline will normally be applied in a progressive manner." Progressive discipline is not required in the CBA if an employee is discharged for just cause.

{¶ 25} As cited above in ¶ 18, Section 7.7 of the CBA lists a range of disciplinary actions which may be imposed "[d]epending upon the seriousness of the conduct": verbal counseling, verbal reprimand with written summary, written reprimand, suspension up to 30 calendar days, or suspension with recommendation for dismissal.

{¶ 26} We find the CBA permitted appellant to skip progressive discipline "[d]epending upon the seriousness of the conduct" and/or for "just cause." Therefore, the gravamen of this case is set forth in the arbitrator's award at 8: "The parties agreed that the following issue is before the Arbitrator: Were the Grievants, Firefighter Bradley Belville, Lieutenant David Martin, and Captain John Hodges discharged for just cause? If not, what shall the remedy be?"

{¶ 27} Article 33 of the agreement governs "Management Rights" and states the following in pertinent part:

**Article 33.1**   Unless otherwise in this Collective Bargaining Agreement, nothing in Chapter 4117 of the Revised Code impairs the right and responsibility of the Employer to:

E. Suspend, discipline, demote or discharge for just cause, or layoff, transfer, assign, schedule, promote, or retain employees.

{¶ 28} The agreement does not define "just cause."  The Inappropriate Behavior Policy in effect prohibits employees while on duty to engage in "[t]hreats or acts of physical violence against a member of the public, coworkers or other township employees" and "[a]busive behavior, hazing or harassment of coworkers or members of the public, horseplay, practical jokes and other disruptive behavior is also prohibited." This policy is not a part of the CBA.  However, unlike the "Guiding Principles" for the Captain Position which "provide guidance in the position of Fire Captain," this policy pertains to CBA members while on duty.

{¶ 29} In his award, the arbitrator outlined the complained of conduct directed toward Musser at length, and stated the following at 17:

The basic facts of this case are not in dispute.  The evidence supports the conclusion that members of 1-Unit engaged in various activities that would be considered vulgar or offensive in most workplaces.  However, there is clear evidence that these types of activities are not unusual for firefighters who work together on 24-hour shifts.  Behaviors occur that would not be tolerated in almost any other workplace.  Numerous witnesses testified that

the work culture in a firehouse is unique, and that the behavior of the Grievants was consistent with normal firehouse behavior.

{¶ 30} The arbitrator concluded, "the conduct of the members of 1-Unit was within the range of activities that are generally considered acceptable interaction among firefighters." *Id.* The arbitrator acknowledged, "[t]he fact that these activities were occurring does not necessarily mean that everyone working on the unit must willingly accept them." *Id.* He stated at 17-18:

Clearly, no one should be forced to participate in workplace activities that are clearly unrelated to the job. If any member of 1-Unit made his or her objections known, other crew members would be obligated to exclude the complaining crewmember from the activities. However, a crew member who is offended or uncomfortable with any of the workplace rituals, has a clear responsibility to make his or her concerns known to coworkers.

{¶ 31} The arbitrator concluded at 21, "Musser did not clearly communicate that he objected to the conduct that led to the discharge of the Grievants. He did not notify members of 1-Unit that he was no longer willing to tolerate their behavior. Further, Musser did not make any complaint either within or outside the chain of command." The arbitrator further concluded, "the Township failed to establish that any of the Grievants engaged in conduct that they knew or should have known was unwelcome." *Id.*

{¶ 32} To reiterate, the arbitrator found the complained of conduct "was within the range of activities that are generally considered acceptable interaction among

firefighters." Conversely, in its appellate brief at 16-17, appellant deems the complained of conduct as workplace bullying. Appellant argues the arbitrator exceeded his powers and made a material mistake. However, other than citing to articles about workplace bullying, appellant does not explain how the arbitrator made a material mistake in this case. Appellant merely notes, "[t]he arbitrator and the trial court simply refused to acknowledge Musser talked individually to Belville and then tried to address this issue again at dinner" and Musser did not have "to confront the bullying in order for the behavior to be 'unwelcome'." Appellant's Brief at 17. Appellant ignores the fact that "Musser appeared to willingly accept all the firehouse banter and the horseplay * * * as he initially embraced the conduct as a sign of acceptance by full-time firefighters." Arbitrator's Award at 7-8. In fact, Musser instigated some of the conduct. *Id.* at 6-7.

{¶ 33} In its June 4, 2021 judgment entry at 7, the trial court found the arbitrator "appears to have reasonably construed and applied the CBA, and the Award draws its essence from the CBA." We agree.

{¶ 34} The arbitrator determined the facts did not rise to the level of just cause. Contract interpretation is left to the discretion of the arbitrator as long as it does not conflict with an express term in the CBA and/or cannot be rationally derived from the terms of the CBA. We cannot find either to apply in this case. We also cannot find the arbitrator's interpretation was unlawful, arbitrary or capricious. Whether we agree with the arbitrator's interpretation is not for us to say. As noted in ¶ 15, our role is not to second-guess the substantive nature of the arbitrator's decision, but to determine if there is any evidence of material mistake or extensive impropriety. After a thorough and lengthy review of the record, the arbitrator's award, and the trial court's decision, we do not find a material mistake or extensive impropriety regarding the arbitrator's decision on just cause.

{¶ 35} Despite our decision that the arbitrator exceeded his powers in determining the grievants were not afforded proper due process, the sole assignment of error is denied.

{¶ 36} The judgment of the Court of Common Pleas of Delaware County, Ohio is hereby affirmed.

By Wise, Earle, J.

Baldwin, P.J. and

Delaney, J. concur.


EEW/db

[Cite as *Orange Twp. v. Internatl. Assn. of Fire Fighters Local 3816*, 2022-Ohio-2757.]