[Cite as *U.S. Claims OPCO, L.L.C. v. Wells-Niklas*, 2023-Ohio-1169.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
| --- | --- | --- |
|  |  | Hon. W. Scott Gwin, P.J. |
| US CLAIMS OPCO, LLC | : | Hon. William B. Hoffman, J. |
|  | : | Hon. Craig R. Baldwin, J. |
| Plaintiff-Appellee | : |  |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2022 CA 00097 |
| NATASHA WELLS-NIKLAS | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |

CHARACTER OF PROCEEDING:　　　　Civil appeal from the Stark County Court of
　　　　　　　　　　　　　　　　　　　Common Pleas, Case No. 2022CV00311

JUDGMENT:　　　　　　　　　　　　　Affirmed

DATE OF JUDGMENT ENTRY:　　　　April 5, 2023

APPEARANCES:

For Plaintiff-Appellee　　　　　　　　　For Defendant-Appellant

OWEN J. RARRIC　　　　　　　　　　　JAY KRASOVEC
4775 Munson Street N.W.　　　　　　　405 Rothrock Road #103
Canton, OH 44735-6963　　　　　　　　Akron, OH 44321

*Gwin, P.J.*

{¶1}    Appellant Natasha Wells-Niklas appeals the June 21, 2022 judgment entry of the Stark County Court of Common Pleas denying her motion to vacate and granting the application of appellee to confirm the arbitration award.

*Facts & Procedural History*

{¶2}    On July 12, 2014, Anquez Campbell drowned while swimming at a business owned by Baylor Beach Park, Inc., located in Stark County, Ohio.  At the time of his death, he was survived by his mother and next of kin, Ida Campbell ("Campbell").  Campbell retained appellant as her attorney to represent her legal interests after her son's death.

{¶3}    In 2015, Campbell individually, and as Administratrix/Executor and beneficiary of the Estate of Anquez Campbell, executed a document entitled, "Purchase, Sale, Assignment and Equitable Lien Agreement" ("Agreement") with appellee US Claims OPO, L.L.C. dba US Claims ("USC").  USC is a limited liability corporation that, pursuant to a contract, advances money to plaintiffs involved in personal injury litigation in exchange for purchasing a portion of the potential proceeds of the litigation.  The transaction is called a "non-recourse civil litigation advance."  R.C. 1349.55(A)(1).  USC's principal place of business is in New Jersey.  In the Agreement, Campbell agreed to sell an interest in her anticipated proceeds from the wrongful death action to appellee.  Appellee paid Campbell $32,459.86, which included fees, costs, and a payoff to a prior legal funding company.

{¶4}    The terms of the Agreement included an arbitration provision which provided, "USC and I agree that any and all controversies, claims, disputes, suits or causes of action arising out of, or relating to this Agreement, * * * including the question

of arbitrability of any such Claim, *shall* be settled by binding arbitration." Further, "this agreement to arbitrate is binding upon and inures to the benefit of each of USC's and my respective heirs, executors, administrators, successor and assigns, as applicable." The Agreement specified the arbitration would be held before a single arbitrator from the New Jersey Academy of Mediators and Arbitrators.

{¶5} As part of the Agreement, Campbell signed an "Irrevocable Letter of Instruction to Counsel." The letter was addressed to appellant and states, in pertinent part, "[t]his letter, along with a copy of the [Agreement], will confirm that I am irrevocably assigning an interest in the proceeds from any judgment or settlement of my pending Case (as described below) to [USC]." The letter instructed appellant to, among other duties, satisfy appellee's lien pursuant to the Agreement before disbursing any settlement or judgment proceeds.

{¶6} Appellant also signed an "Acknowledgment of Counsel" ("Acknowledgment"), which was made part of the Agreement. The Acknowledgment provides:

> I, Natasha Wells Niklas, Esquire, as your attorney, acknowledge the receipt of the above Irrevocable Letter of Instruction to Counsel (the "Letter") and further acknowledge notice of the fact that you, my client(s) have granted USC a security interest and lien in the Proceeds of your Case under the Agreement. I acknowledge that, pursuant to the Agreement, you have assigned a portion of your Proceeds to USC, and that additional portions of your Proceeds may be assigned by you to USC through one or more Addenda subject to the terms of the Agreement. I also acknowledge that I

will follow all of your irrevocable instructions outlined in the Letter and will honor the terms of your Agreement as it may be amended by one or more Addenda * * * I further represent that all disbursements of funds in connection with the Case, including your Proceeds, will be through my attorney trust account, and that I will take the necessary steps so that all payments made by the defendant or insurer in connection with the case are made directly to me or my firm for deposit in my attorney trust account. Prior to making any distribution to you or anyone else, I will contact USC to ascertain the amount due and will not pay any portion of your proceeds, other than the "Permitted Liens," to you, or on your behalf until USC's lien is satisfied in full. * * * In the event of a dispute with USC, I agree that the only disbursement that will be made from the proceeds will be for Permitted Liens, that the remainder of the proceeds will be held by me in my attorney trust account until such dispute is resolved, and that any such dispute would be subject to arbitration under Section 8 of the Agreement.

* * *

I certify that I am the attorney of record in the above-captioned case, I further certify that I received a copy of and reviewed the Agreement, that all costs and fees have been disclosed by USC, including the annualized rate of return applied to calculate the amount to be paid by you, that I am being paid on a contingency basis per a written fee agreement, and that the representation set forth in the Agreement are true and accurate to the best

of my knowledge.  This acknowledgement and certification shall be deemed a material part with the USC's Agreement.

{¶7}   The miscellaneous terms of Agreement stated that, "together with the Disclosure and Exhibit, [this] constitutes the entire agreement and understanding of the parties with respect to the purchase of the specific portion of the Proceeds contemplated hereby * * *."  If any portion of the Agreement was deemed invalid or unenforceable, "it would not affect the validity or enforceability of (i) any other part of this Agreement, and the Agreement shall be modified to the extent legally possible to legally carry out the intent of this Agreement and (ii) any Agreement between USC and another other party."

{¶8}   Campbell executed a document entitled "Addendum #1" ("Addendum") on December 29, 2015.  Campbell agreed to sell an additional portion of the proceeds of the wrongful death action to appellee.  Pursuant to the Addendum, appellee paid Campbell $11,000, including fees and costs.  The Addendum contains a provision where, "[p]er the Agreement (as it may have been amended), the terms and conditions of which are incorporated by reference and reaffirmed hereby in their entirety, I sold USC a portion of my Proceeds * * *.  This Addendum and the rights and obligations of the parties thereto related are subject to the terms and conditions of the Agreement."  Appellant signed the Addendum, stating, "I hereby acknowledge the purchase and sale of the Additional Property by my client(s), as set forth above."

{¶9}   In 2016, the Stark County Probate Court appointed Campbell the Administrator of the Estate of Anquez.  Campbell then filed a wrongful death action against Baylor Beach Park in the Stark County Court of Common Pleas.  Appellant

represented Campbell.  Campbell passed away in 2018.  Campbell's estate was opened; however, the USC non-recourse civil litigation advance was not made part of her estate.

{¶10}  In 2019, an Application to Approve Settlement and Distribution of Wrongful Death and Survival Claims was filed in Anquez's estate.  The application stated there had been an offer of full settlement in the wrongful death action in the amount of $325,000.  The wrongful death beneficiaries listed were Campbell's estate, and her next of kin.  The application did not provide for any payments to appellee.  The Stark County Probate Court approved the settlement and distribution of the wrongful death claim.

{¶11}  On May 20, 2020, appellee notified Campbell's heirs and appellant by letter that it was aware the wrongful death action had been settled for $325,000.  Appellee stated it was not notified of the death of Campbell, the settlement, or the probate proceedings until it received a letter from appellant dated February 17, 2020.  The application to approve the settlement and distribution of the wrongful death proceeds did not provide for any payment to appellee.

{¶12}  Because appellee had not been paid its "Property" as described in the Agreement, pursuant to the Agreement, appellee initiated a demand for arbitration.  Appellant challenged the jurisdiction of the arbitrator to hear the case.  The arbitrator determined it had jurisdiction over disputes arising out of the Agreement based on the terms of the Agreement and Acknowledgment.  The arbitrator determined that, by signing the Acknowledgment, appellant was required to participate in the arbitration.

{¶13} In 2021, Campbell's estate, Campbell's heirs, and appellant filed a complaint with the Stark County Court of Common Pleas requesting declaratory judgment and injunctive relief.  They argued that, as non-parties to the USC contract, they had no

obligation to arbitrate with appellee.  Campbell and her heirs were dismissed from the arbitration by appellee because they were not parties to the agreement.  Appellee filed a motion to dismiss appellant's claims.  In appellant's response to the motion to dismiss, she argued: she was not a party to the Agreement; pursuant to R.C. 1349.55, the Ohio Rules of Professional Conduct defined her responsibilities as the attorney for Campbell's estate; and a letter of acknowledgment signed by the attorney pursuant to a non-recourse civil litigation advance did not create a contractual relationship between the non-recourse lender and the attorney, thereby preventing enforcement of an arbitration clause against the attorney.

{¶14}  The trial court granted appellee's motion to dismiss, and dismissed the complaint for declaratory judgment and injunctive relief. The trial court allowed all claims and issues to be arbitrated in the New Jersey arbitration.

{¶15}  Appellant appealed the trial court's determination to this Court, arguing the trial court erred when it granted appellee's motion to dismiss.  Appellant made several arguments to this Court, including: (1) under Ohio law governing non-recourse civil litigation advances, the liability of the attorney representing the consumer in the civil action is limited by the jurisdiction of the Ohio Rules of Professional Conduct and (2) because she executed only the Acknowledgment, she is not bound to the terms of the Agreement, including the arbitration provisions found in Section 8 of the Agreement.

{¶16}  In *Estate of Campbell v. US Claims OPO, L.L.C.*, 5th Dist. Stark No. 2021CA00086, 2022-Ohio-711, (*"Campbell I"*) we overruled appellant's assignment of error.  We first cited to the plain language of the Acknowledgement that, by her signature, appellant agreed to be bound.  Next, we found that, by signing the Acknowledgement,

appellant expressly acknowledged receipt of the Agreement and the Irrevocable Letter of Instruction to Counsel, and she certified she had reviewed the Agreement. We found appellant, "undeniably agreed to follow all the 'irrevocable instructions outlined in the Letter and [would] honor the terms of your Agreement, as it may be amended by one or more Addenda.'"

{¶17} Further, we held that, by signing the Acknowledgment, appellant was aware the Acknowledgment was "deemed a material part of USC's Agreement," and the plain language of the Agreement incorporates the Irrevocable Letter of Instruction to Counsel and Acknowledgment to collectively constitute the Agreement. We noted that Section 8 of the Agreement specifically provides claims shall be settled by binding arbitration. We found the Acknowledgment itself contains its own express provision for arbitration. We concluded, "while [appellant] may arguably not be a party to the Agreement, she is contractually bound to participate in arbitration based on the plain and unambiguous language of the Acknowledgment." As to appellant's argument that the Ohio Rules of Professional Conduct shield her from liability, we found the Rules of Professional Conduct did not prevent the arbitration provision from being enforced, and, "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims."

{¶18} Appellant appealed our decision to the Supreme Court of Ohio and included one proposed assignment of error, as follows: the appellate court failed to apply the protections of R.C. 1349.55 and erroneously compelled binding arbitration. The Ohio Supreme Court declined jurisdiction of appellant's appeal. *Estate of Campbell v. US Claims OPO, L.L.C.*, 167 Ohio St.3d 1451, 2022-Ohio-2246, 189 N.E.3d 823.

{¶19} The arbitrator held a hearing on October 19, 2021. On February 9, 2022, the arbitrator entered a final arbitration award in favor of appellee against appellant for $121,600, plus attorney fees of $24,654 and costs of $7,980. The arbitrator issued a thorough and detailed report explaining his arbitration award. Appellant made four arguments the arbitrator addressed, as follows: (1) appellant was not obligated to arbitrate the dispute; (2) Campbell lacked authority to bind the estate to the Agreement because she had not yet been confirmed as administratrix by the probate court; (3) appellant's obligation under the Agreement was only to her client, and she is not a party to the Agreement; and (4) appellant did not have control of the proceeds of the litigation.

{¶20} The arbitrator specifically addressed these arguments. First, the arbitrator found the issue of whether appellant was obligated to arbitrate was previously determined, as it was the subject of motion practice, and this Court's decision in *Campbell I*. Second, the arbitrator found the fact that the probate court had a say in the ultimate distribution of the proceeds from the wrongful death action does not invalidate the Agreement or change the effect of appellant's Acknowledgment. The arbitrator noted the distribution approved by the probate court was done in the manner proposed by appellant, who was aware of appellee's interest, but without the court having knowledge of appellee's claim. Further, that appellant did not, in her capacity as the attorney for Anquez's estate, notify the court of appellee's claim, or notify appellee of the settlement. Third, the arbitrator found no inconsistency between the Agreements and the requirements of the Ohio non-recourse civil litigation contracts law (R.C. 1349.55). Further, that the Acknowledgment expressly provides it is "deemed a material part of the Agreement." Finally, the arbitrator found appellant's argument that she did not have the

funds in her trust account to be not well-taken, because, in the Agreements, she represented that she would take the necessary steps so that all payments would be made to her firm for deposit in her trust account, and no evidence of her doing so was presented at the hearing. The arbitrator stated, "whether [appellant] or substitute counsel continued pursuit of the Wrongful Death matter to its conclusion does not alter [appellant's] responsibilities under the Agreement to timely notify [USC] of the settlement."

{¶21} The arbitrator noted that appellant did not contest appellee's damage calculation, but she did argue the distribution was under the control of the probate court. The arbitrator stated,

> [N]o evidence was presented on the subject of the likely outcome of the Probate Court action if [USC] had participated, and any effort to determine what the Probate Court would have done is speculation. The Wrongful Death action resulted in a settlement of $325,000, which, after permitted deductions, would leave sufficient funds to reimburse [USC] in full for the claimed damages. While [USC] could have no guarantee that the Probate Court would satisfy the full, amount, [appellant's] failure to notify [USC] of the settlement denied [USC] the opportunity to pursue its claims and assert its property rights in the Probate Court.

{¶22} The arbitrator concluded that, as a result of the actions or inactions of appellant, appellee was wrongfully denied its property. The arbitrator awarded appellee $121,006.00, plus attorney's fees and costs of $25,654.00, and arbitrator compensation of $7,980.00.

{¶23} On March 2, 2022, appellee filed a complaint against appellant, requesting an order confirming a final arbitration award in appellee's favor.  Appellant filed a motion to vacate the arbitration award, on the grounds that the New Jersey arbitrator lacked subject matter jurisdiction.  The trial court held an oral hearing on April 25, 2022.

{¶24} The trial court issued a judgment entry on June 21, 2022, denying appellant's motion to vacate, and granting appellee's application to confirm arbitration. The trial court found appellant failed to demonstrate the arbitrator exceeded the scope of his authority or power pursuant to R.C. 2711.10(D) or 9 U.S.C. Section 10(a)(4).  The trial court found the arbitrator was presented with a breach of contract claim and fashioned an award of contract damages to resolve the claim.  The trial court stated, "[appellant] does not point * * * to any specific aspect of the arbitrator's award that was in excess of the arbitrator's authority or power and instead advances arguments relating to legality and subject matter jurisdiction.  These questions have been answered by the Fifth District Court of Appeals in [*Campbell I*.]"  The trial court found the parties entered into an arbitration agreement, the agreement required breach of contract claims to be submitted to binding arbitration, an arbitration was held, and an award was issued that consisted of contractual damages.  Accordingly, the arbitrator acted sufficiently within the scope of his authority or power such that the court was required to confirm the arbitration award.  As to appellant's argument regarding the interplay between R.C. 1349.55 and the Rule of Professional Conduct 1.15, the trial court cited *Campbell I*, and determined it was bound to adhere to our determination in the previous appeal.

{¶25} Appellant appeals the June 21, 2022 judgment entry of the Stark County Court of Common Pleas, and assigns the following as error:

{¶26} "THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO VACATE ARBITRATION AWARD AND DISMISS, OR ALTERNATIVELY, TO STAY PROCEEDINGS (THE 'MOTION TO VACATE')."

I.

{¶27} Appellant contends the trial court committed error in denying her motion to vacate the arbitration award and in granting appellee's application to confirm arbitration award.

{¶28} The Federal Arbitration Act ("FAA") expresses a presumption that arbitration awards will be confirmed. "When courts are called on to review an arbitrator's decision, the review is very narrow; one of the narrowest standards of judicial review in all of American Jurisprudence." *Lattimer-Stevens Co. v. United Steelworkers*, 913 F.2d 1166 (6th Cir. 1990). "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority * * * serious error does not suffice to overturn his decision." *United Paperworkers Int'l. Union Misco, Inc.*, 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). A court may vacate an arbitration award under very limited circumstances pursuant to 9 U.S.C. Section 10(a), specifically: (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evidence of partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing or in refusing to hear evidence; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. *Id.* Absent fraud by the parties or the arbitrator's dishonesty, reviewing courts are not

authorized to reconsider the merits of an award, since this would undermine the federal policy of privately settling disputes by arbitration. *Id.*

{¶29} Similarly, in Ohio, arbitration awards are presumed valid. *Schaefer v. Allstate Ins. Co.*, 63 Ohio St.3d 708, 590 N.E.2d 1242 (1992). The Ohio Supreme Court observed that, "[t]he whole purpose of arbitration would be undermined if courts had broad authority to vacate an arbitration award." *Mahoning Cnty. Bd. of Mental Retardation & Developmental Disabilities v. Mahoning Cnty. Education Assn.*, 22 Ohio St.3d 80, 488 N.E.2d 872 (1986). When reviewing a decision of a common pleas court confirming or vacating an arbitration award, this Court should accept findings of fact that are not clearly erroneous, but decide questions of law de novo. *Portage Cnty. Bd. of Developmental Disabilities v. Portage Cnty. Educators' Assn. for Developmental Disabilities*, 153 Ohio St.3d 219, 2018-Ohio-1590, 103 N.E.3d 804. "The substantive merits of the original arbitration award are not reviewable on appeal absent evidence of material mistake or extensive impropriety." *Orange Twp. V. IAFF Local 3816,* 5th Dist. Delaware No. 21 CAE 070033, 2022-Ohio-2757, quoting *N. Ohio Sewer Contrs., Inc. v. Bradley Dev. Co.*, 159 Ohio App.3d 794, 2005-Ohio-1014, 825 N.E.2d 650 (8th Dist).

{¶30} R.C. 2711.10 provides that a court may vacate an award "upon the application of any party," for any of the following reasons: (1) the award was procured by corruption, fraud, or undue means; (2) there was evident partiality or corruption on the part of the arbitrators; (3) the arbitrators are guilty of misconduct in refusing to postpone the hearing, or refusing to hear pertinent and material evidence; or (4) the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite aware upon the subject matter submitted was not made. R.C. 2711.10 thus "limits judicial

review of arbitration to claims of fraud, corruption, misconduct, an imperfect award, or that the arbitrator exceeded his authority." *Goodyear Tire & Rubber Co. v. Local Union No. 200*, 42 Ohio St.2d 516, 330 N.E.2d 703 (1975).

{¶31} Appellant divides her assignment of error into three separate parts.

*Part I.*

{¶32} Appellant first argues the arbitration award should be vacated pursuant to R.C. 2711.10(D) and USC Section 10(a)(4) because the arbitrator exceeded his powers by ruling on an issue that is within the Ohio Supreme Court's exclusive subject matter jurisdiction. Appellant's argument is essentially the same argument she made in her previous appeal to this Court. Pursuant to our analysis in *Estate of Campbell v. U.S. Claims OPO, L.L.C.*, 5th Dist. Stark No. 2021CA00086, 2022-Ohio-711, appeal not allowed *Estate of Campbell v. U.S. Claims OPO, L.L.C.*, 167 Ohio St.3d 1451, 2022-Ohio-2246, 189 N.E.3d 823, we find the arbitrator had the subject matter jurisdiction to issue his opinion.

*Part II.*

{¶33} In the second part of her argument, appellant contends the New Jersey arbitrator exceeded his authority because the non-recourse civil litigation loan at issue is governed by Ohio Revised Code Section 1349.55, which does not make appellant a party to the contract, but merely requires her to acknowledge the loan and comply with Ohio Rule of Professional Conduct 1.15(e), the enforcement of which is in the Supreme Court of Ohio's exclusive jurisdiction. In her brief, appellant states, "the parties have fully briefed in *Campbell* the issue of whether Niklas entered a separate, enforceable contract guaranteeing her purported client's payment of non-recourse civil litigation loan * * * or

simply an acknowledgment of the loan triggering her obligations to protect non-client funds in her possession under Ohio Rule of Professional Conduct 1.15(e), a matter in the Supreme Court of Ohio's exclusive jurisdiction."  Appellant does not make any further argument in this portion of her brief.

{¶34}  As this Court has stated in *RHDK Oil & Gas, L.L.C. v. Willowbrook Coal Co.*, 5th Dist. Tuscarawas No. 2020 AP 08 0017, 2021-Ohio-1362, appeal not allowed *RHDK Oil & Gas, L.L.C. v. Willowbrook Coal Co.*, 164 Ohio St.3d 1448, 2021-Ohio-3336, 173 N.E.3d 1242, the "Rules of Appellate Procedure do not allow incorporating argument by reference to other sources."  Further, "if evidence, authority, and arguments exist that can support an assignment of error, it is not the duty of the appellate court to root it out." *Sutton v. Ohio Dept. of Edn.*, 8th Dist. Cuyahoga No. 104476, 2017-Ohio-105.

{¶35}  In *Campbell I*, we held that:  appellant is bound by the terms of the Agreement, including the arbitration agreement; the Acknowledgment signed by appellant contains its own express provision for arbitration; by signing the Acknowledgment, appellant expressly agreed to be bound by the arbitration provision; and the Ohio Rules of Professional Conduct did not prevent the arbitration provision from being enforced. *Estate of Campbell v. U.S. Claims OPO, L.L.C.*, 5th Dist. Stark No. 2021CA00086, 2022-Ohio-711, appeal not allowed *Estate of Campbell v. U.S. Claims OPO, L.L.C.*, 167 Ohio St.3d 1451, 2022-Ohio-2246, 189 N.E.3d 823.  To the extent appellant requests this Court to reverse or modify our previous decision, we decline to do so.

{¶36}  We additionally note that appellant appealed our previous decision to the Ohio Supreme Court, arguing R.C. 1349.55 provides that appellant's responsibilities are set forth in the Ohio Rules of Professional Conduct, which the Ohio Supreme Court has

exclusive jurisdiction over. The Ohio Supreme Court declined jurisdiction of appellant's appeal. *Estate of Campbell v. U.S. Claims OPO, L.L.C.*, 167 Ohio St.3d 1451, 2022-Ohio-2246, 189 N.E.3d 823. Accordingly, we overrule the second part of appellant's assignment of error.

*Part III.*

**{¶37}** In the third portion of her argument, appellant contends the arbitrator was "intentionally vague" in describing his legal basis for finding appellant personally liable.

**{¶38}** We first note that, upon our review of the arbitrator's decision, we find the arbitrator's report was not vague. The arbitrator issued a detailed report, specifically addressed each of appellant's arguments, and gave his rationale in overruling each of appellant's arguments.

**{¶39}** Further, this Court has previously held, in reviewing an arbitrator's award, we must distinguish between "an arbitrator's act in excess of his powers and an error merely in the way the arbitrator executed his powers. The former is grounds to vacate, the latter is not." *Orange Twp. V. IAFF Local 3816,* 5th Dist. Delaware No. 21 CAE 070033, 2022-Ohio-2757 see also *O.R. Sec., Inc. v. Prof'l Planning Accocs., Inc.*, 857 F.2d 742 (11th Cir. 1988) (the arbitrator's reasoning need not be explained). In this case, appellant argues because of the alleged vagueness of his opinion, the arbitrator exceeded his powers. As detailed above, we do not find the arbitrator's opinion vague. Additionally, this would be an error in the way in which the arbitrator executed his powers, not an act in excess of his powers.

**{¶40}** Appellant next contends the arbitrator's award was unenforceable because she cannot be the guarantor of her purported client's debt, and the arbitrator exceed his

authority because, pursuant to R.C. 1349.55, appellant must only fulfill her obligations under the Ohio Code of Professional Responsibility, which she did in this case. Appellant also argues the arbitrator ignored clear New York precedent cited by appellant purportedly holding that an attorney's mere acknowledgment of a nonrecourse civil litigation loan contract does not make the attorney a party to the contract or a guarantor of the contract.

{¶41} A reviewing court's inquiry into whether the arbitrator exceeded their authority is limited. *City of Cambridge v. AFSCME*, 5th Dist. Guernsey No. 1999CA30, 2000 WL 502691 (April 4, 2000). A reviewing court is confined to ascertaining whether the award draws its essence from the contract. *United Paperworks Intern. Union v. AFL-CIO v. Misco, Inc.* 484 U.S. 29, 98 L.Ed.2d 286, 108 S.Ct. 364 (1987). "A mere ambiguity in the opinion accompanying an arbitration award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for vacating the award when such award draws its essence" from an agreement. *Id.,* quoting *Ohio Office of Collective Bargaining v. Ohio Civil Service Employee Assn.*, 59 Ohio St.3d 177, 572 N.E.2d 71 (1991).

{¶42} An arbitrator's award departs from the essence of the agreement when: (1) the award conflicts with the express terms of the agreement, and/or (2) the award is without rational support or cannot be rationally derived from the terms of the agreement." *Id.* As long as the arbitrator is even arguably construing or applying the contract and acting within the scope of this authority, the court cannot overturn his decision simply because it disagrees with his factual findings, contract interpretation, or choice of remedies. *United Paperworks Intern. Union v. AFL-CIO v. Misco, Inc.* 484 U.S. 29, 98

L.Ed.2d 286, 108 S.Ct. 364 (1987); *Worndle v. Colonnade Medical Group, Ind.*, 5th Dist. Fairfield No. 17-CA-24, 2018-Ohio-462 (parties agree to accept the arbitrator's determination concerning the issue and agreed to accept the result regardless of its legal or factual accuracy).

{¶43} "An arbitrator's improper determination of the facts or misinterpretation of the contract does not provide a basis for reversal of an award by a reviewing court because it is not enough to show the arbitrator committed an error – or even a serious error." *Cedar Fair, L.P. v. Falfas*, 140 Ohio St.3d 447, 2014-Ohio-3943, 19 N.E.3d 893; see also *Stolt-Nielsen S.A. v. AnimalFeeds Intl' Corp.*, 559 U.S. 662, 130 S.Ct. 1758, 176 L.Ed.2d 605 (2010) (arbitrators do not exceed their powers when they make errors, even serious errors; have to defer to arbitrator's contract interpretation of the contract).

{¶44} We find the trial court did not commit error in finding the arbitration award drew its essence from the Agreement. The arbitration clause contained in the Agreement is broad, providing that "any and all controversies, claims, disputes, suits, or causes of action arising out of, or relating" to the Agreement are subject to arbitration. There is a rational nexus between the award and the Agreement. Appellant made specific promises and expressly agreed to perform certain duties in the Acknowledgment and Certification ("prior to making any distribution * * * I will contact USC * * * and will not pay any portion of your proceeds, other than the "Permitted Liens," to you, or on your behalf until USC's lien is satisfied in full * * *"). Appellant affirmed and agreed the Acknowledgment and Certification were a material part of the Agreement. There is no dispute that appellant did not notify appellee of the settlement, and did not notify the court of appellee's claim.

The award issued by the arbitrator is based upon appellant's lack of notifying appellee of the settlement and/or failure to notify the court of appellee's claim.

{¶45} As to appellant's argument with regard to New York law, we find the case she cites, *Prospect Funding Holdings, LLC v. Paiz*, 183 A.D.3d 486, 123 N.Y.S.3d 685 (N.Y. App. 2020), is distinguishable from the instant case. In *Paiz*, the attorney did not sign an acknowledgment containing an agreement to arbitrate. *Id.* Further, the attorney's acknowledgment only acknowledged "receipt of the letter from his client" and a reiteration of the attorney's "agreement to follow his client's direction." *Id.* In this case, appellant expressly agreed to perform certain duties, including the duty to distribute proceeds of the litigation in accordance with the Agreement. A more recent New York case found *Paiz* distinguishable from a case in which an attorney acknowledgment imposed express obligations upon the attorney defendants, including the duty to distribute any proceeds of the litigation in accordance with the terms of the signed agreements. *P.S. Finance, LLC v. Eureka Woodworks, Inc.*, 2023 WL 2000727, 2023 N.Y. Slip Op. 00877 (Feb. 15, 2023) (it is significant when attorney acknowledgments expressly agree to distribute proceeds of the underlying litigation in accordance with the terms of the agreements signed by their clients and when the litigation funding agreements incorporate the attorney acknowledgments by reference).

{¶46} Pursuant to our limited review in accordance with both Ohio and federal law as detailed above, we find the arbitrator's award does not depart from the essence of the Agreement. The trial court did not commit error in denying appellant's motion to vacate and granting appellee's application to confirm the arbitration award.

{¶47} Based on the foregoing, appellant's assignment of error is overruled.

{¶48} The June 21, 2022 judgment entry of the Stark County Court of Common Pleas is affirmed.

By Gwin, P.J.,

Hoffman, J., and

Baldwin, J., concur